**UNITED STATES of America, Plaintiff,**

v.

**WEDZEB ENTERPRISES, INC.; William E. Daniels; Westinghouse Electric Corporation; General Electric Company; Doerr Electric Corporation; Sprague Electric Company; Crouse–Hinds Company; and Federal Signal Corporation, Defendants.**

No. IP 90–1877C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 9, 1992.

Harold Bickham, Asst. U.S. Atty., Indianapolis, IN, Richard Stewart, Thomas P. Carroll, Environmental Enforcement Section, U.S. Dept. of Justice, Washington, DC, Dorothy Attermeyer, Asst. Regional Counsel, U.S. E.P.A., Region V, Chicago, IL, for plaintiff.

Jan Feldman, Joseph A. Strubbe, Pope & John, Ltd., Chicago, IL, Joseph B. Carney, John R. Schaibley III, Baker & Daniels, Michael R. Fruehwald, Sherry W. McGrath, Barnes & Thornburg, Warren D. Krebs, Parr, Richey, Obremskey & Morton, Indianapolis, IN, Kent M. Frandsen, Lebanon, IN, for defendants.

## ENTRY

BARKER, District Judge.

This matter arises under "CERCLA" (the Comprehensive Environmental Response, Compensation, and Liability Act), 42 U.S.C. § 9601 *et seq.* (hereinafter "CERCLA" or the "Act"), otherwise known as "Superfund" to those not conversant in the jargon of the nation's environmental laws, which is a scheme to clean up waste sites that imminently threaten the public's health and wellbeing. The incident which brings these parties before the Court is the release of PCBs into the environment more than a decade ago at a warehouse in Lebanon, Indiana.

This Entry disposes of five (5) pretrial motions. First, the United States seeks summary judgment as concerns the CERCLA liability of William E. Daniels and Wedzeb Enterprises, Inc. Second, General Electric Company, Doerr Electric Corporation, Sprague Electric Company, Crouse–Hinds Division of Cooper Industries, and Federal Signal Corporation (collectively the "Manufacturer Defendants"), move for summary judgment on the issue of their CERCLA liability. Third, these same defendants move the Court to strike Exhibits 6 and 7 of the declaration of Thomas P. Carroll, plaintiff's counsel. Fourth, the United States asks the Court to strike various defenses of Westinghouse, Inc., and finally, Westinghouse moves for summary judgment on the question of its CERCLA liability. For the reasons set forth below,

the Government's motion for summary judgment is denied, the Manufacturer Defendants' motions are denied, the Government's motion to strike defenses of Westinghouse is granted in part, and the motion of Westinghouse for summary judgment is denied.

## BACKGROUND

William E. Daniels ("Daniels") is the President of Wedzeb Enterprises, Inc. ("Wedzeb") (collectively the "Defendants"), a concern which he formed in 1974. Daniels has remained Wedzeb's President from the time of its incorporation until present, as well as its sole shareholder since 1975. Wedzeb distributes air conditioning, heating and refrigerating component parts. Beginning in the early 1980s, it amassed large quantities of electrical gear from the General Electric Company, Doerr Electric Corporation, Sprague Electric Company, Crouse–Hinds Division of Cooper Industries, Federal Signal Corporation, and Westinghouse. Much of the inventory that Wedzeb collected from these parties contained hazardous substances, including polychlorinated biphenyls ("PCBs"), dioxin, and chlorinated furans.

In February 1981, Daniels entered into a contract to purchase a warehouse on 312 Ballard Street in Lebanon, Indiana ("the site"). Starting on or about April 1, 1981, Daniels leased the warehouse to Wedzeb, which began to move electrical components into the warehouse, including tens of thousands of PCB-laden capacitors. In all, seventy-seven tons of material was stored at the Ballard Street property. Apparently, Daniels did not directly supervise storage activities at the site, as this was the responsibility of Wedzeb employees. *See Daniels Deposition*, April 29, 1992, at 58; *James Cleary Deposition*, January 30, 1992, at 33.

On May 2, 1981, a fire completely destroyed the warehouse, resulting in the release of hazardous substances into the environment. In January, 1984, EPA notified Wedzeb and Daniels of their liability for response costs under CERCLA, and requested that they pay the costs that the United States had incurred for its clean-up activities. In October, 1985, EPA issued an Administrative Order requiring Wedzeb to complete clean-up at the Site, though Wedzeb informed EPA three months later that it could not comply with the Administrative Order. *See On–Scene Coordinator's Report, CERCLA Removal Project*, at 5. In 1987, EPA conducted a removal action and incurred costs at the site to abate the immediate threat from contamination.

## DISCUSSION

### I. *Summary Judgment Standards*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12; *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989).

While the initial burden rests squarely on the party moving for summary judgment, the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf*, 870 F.2d at 1329; *Posey v. Skyline*

**650**

*Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Denials contained in the pleadings or bald allegations that an issue of fact exists are insufficient to raise a factual issue. *See Shacket v. Philko Aviation, Inc.*, 681 F.2d 506, 513 n. 8 (7th Cir.1982), rev'd on other grounds, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

### II. *The Government's Motion for Summary Judgment Against Wedzeb and Daniels*

The United States asks the Court to enter summary judgment against Daniels and Wedzeb on the issue of their liability for the release of hazardous substances at the site. Under CERCLA, four classes of persons may be held liable for the release of hazardous substances into the environment:

(1) the owner and operator [1] of a vessel or a facility [2],

(2) any person who at the time of disposal [3] of any hazardous substance [4] owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release [5], or a threatened release which causes the incurrence of response [6] costs, of a hazardous substance....

1. CERCLA defines "owner or operator" as: "in the case of an onshore facility or an offshore facility, any person owning or operating such facility, ...." 42 U.S.C. 9601(20)(A)(ii). An "onshore facility" is "any facility (including, but not limited to, motor vehicles and rolling stock) of any kind located, in, on, or under, any land or nonnavigable waters within the United States." 42 U.S.C. § 9601(18).

2. CERCLA defines "facility" as:

(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit pond, lagoon impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601.

3. CERCLA adopts the definition of disposal used in the Solid Waste Disposal Act, 42 U.S.C. § 6903: "[t]he term disposal means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on the land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

4. PCBs, dioxins, and chlorinated furans are hazardous substances within the meaning of the Act. In defining the term "hazardous substance" in 42 U.S.C. § 9601(14), CERCLA incorporates by reference the substances designated as hazardous or toxic under the Clean Air Act, 42 U.S.C. § 7412, the Clean Water Act, 33 U.S.C. §§ 1317(a), 1321(b)(2)(A) (1982), the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6921, the Toxic Substances Control Act, 15 U.S.C. § 2606 (1982). EPA is also authorized to designate additional substances that "may present substantial danger to the public health or welfare or the environment...." 42 U.S.C. § 9602(a).

5. CERCLA defines "release" as: "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)...." 42 U.S.C. § 9601.

6. "The terms 'respond' or 'response' means [sic] remove, removal, remedy, and remedial action;, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25).

42 U.S.C. § 9607 (footnotes added). Liability under CERCLA is without regard to fault. *See U.S. v. Monsanto Co.*, 858 F.2d 160, 167 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 799 F.2d 1312, 1316 (9th Cir.1986); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir.1985).

Liability under § 9607(a) may be avoided, however, if the defendant is able to invoke one of the defenses provided in § 9607(b). That section provides:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
>
> (1) an act of God;
>
> (2) an act of war;
>
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

> (4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b).

■ The government argues that Wedzeb and Daniels are liable under § 9607(a) because: (1) the site is a "facility"; (2) there was a "release" or a "threatened" release of a "hazardous substance" from the site; (3) Daniels and Wedzeb are/were "owners" or "operators" within the meaning of § 9607(a)(1) or (2); and (4) the United States has incurred response costs under CERCLA. The government also contends that Wedzeb is liable for civil penalties and punitive treble damages pursuant to §§ 9606(b)(1) and 9607(c)(3) because it did not comply with the EPA's October 1985 Administrative Order. Those sections provide that:

> [a]ny person who, without sufficient cause, willfully violates, or fails or refuses to comply with any order of the President under subsection (a) of this section may, in an action brought in the appropriate United States district court to enforce such order, be fined not more than $25,000 for each day in which such violation occurs or such failure to comply continues.

42 U.S.C. § 9606(b)(1).

> If any person who is liable for a release or threat of release of a hazardous substance fails without sufficient cause to properly provide removal or remedial action upon order of the President pursuant to section 9604 or 9606 of this title, such person may be liable to the United States for punitive damages in an amount at least equal to and not more than three times the amount of any costs incurred by the Fund as a result of such failure to take proper action. . . .

42 U.S.C. 9607(c)(3). A good faith defense exists to the imposition of penalties provided in these two sections.[7]

---

**7.** This finding is based on CERCLA's legislative history. Senator Stafford, the drafter of CERCLA, explained: "We intend that the phrase 'sufficient cause' would encompass defenses such as the defense that the person who was the subject of the President's order was not the party responsible under the act for the release of the hazardous substance. It would certainly be unfair to assess punitive damages against a party who for good reason believed himself not to be the responsible party." *United States v. Reilly Tar and Chemical Corp.*, 606 F.Supp. 412, 419–20 (D.Minn.1985), *citing* 1 Legislative History, 770–71; *see also Wagner Seed Co. v. Daggett*, 800 F.2d 310, 316 (2d Cir.1986) (allowing good faith defense); *but see Aminoil Inc. v. E.P.A.*, 599

Daniels and Wedzeb argue that: (1) Daniels was not the owner of the site when it burned on May 2, 1981, because only eight (8) percent of the purchase price had been paid at that time and that the deed was held in escrow by the Boone County State Bank; (2) Daniels did not determine or direct what inventory would be located at the site; (3) the fire which caused the release of hazardous substances occurred due to an act of a third party; (4) Daniels and Wedzeb took reasonable precautions to secure the site; and (5) Wedzeb had sufficient cause not to complete the cleanup at the site because EPA delayed approving clean up plans, and by the time that it did, Wedzeb lacked funding because costs had escalated dramatically in the interim.

■ The Court begins its analysis by noting that there is no difference of opinion between the parties concerning three of the four elements that the government must establish for liability to attach under § 9607(a). First, the site is a "facility" because it is a "site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located...." 42 U.S.C. § 9601. Wedzeb admits this fact, *see Admission of Defendant Wedzeb to Plaintiff's Requests for Admission,* at ¶ 7, and that there was a "release" or a "threatened" release of a "hazardous substance" from the site. *See Admission of Defendant Wedzeb to Plaintiff's Requests for Admission,* at ¶ 6; *Defendant Wedzeb and Daniels' Statement of Contentions and Issue of Liability,* at ¶ 2. There is also no question that EPA incurred costs for the remedial actions it took at the site. That leaves but one element outstanding to the Government's prima facie case for CERCLA liability against Daniels and Wedzeb: whether they either presently own or operate the site, or owned or operated the site at the time hazardous substances were disposed of there. *See* § 9607(a)(1) or (2).[8]

Wedzeb presently owns the site. *See Daniels Deposition, 5/4/92, v. 3,* at 37. Therefore, it is liable under § 9607(a)(1) as the current owner. Liability under any other part of § 9607(a) can only be cumulative given this finding, so the Court need not consider whether Wedzeb also "operated" the site.

■ The issue of Daniels' liability under the Act is only slightly less straightforward. He argues that he was neither the owner of the site when it burned on May 2, 1981, because the deed to the site had not been transferred to him by that date, nor the operator, because he did not determine or direct what inventory would be located at the site. The facts clearly indicate, however, that Daniels was the owner of the site on the date of the fire. Daniels entered into a contract to purchase the site in February, 1981. *See Daniels Deposition, 5/29/92,* at 55–56. Under Indiana law, "[w]hen the parties enter into [a land sale] contract, all incidents of ownership accrue to the vendee. (citation omitted). The vendee assumes the risk of loss and is the recipient of all appreciation in value." *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641, 646 (1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974); *Kolley v. Harris,* 553 N.E.2d 164, 168 (Ind.App. 4 Dist.1990). Whether Daniels had the deed in his possession or had only paid a fraction of the purchase price is of no consequence. Equitable title passed to him in February, 1981, when he signed the contract of sale, making him the owner for purposes of CERCLA liability. Again, given this finding, whether there is an alternative basis for liability under § 9607(a)(2) is irrelevant.

F.Supp. 69, 73 (C.D.Cal.1984) (rejecting good faith defense).

**8.** Although the "owner and operator" language of § 9607(a)(1) is in the conjunctive, the Court concurs in the finding of other courts that have considered the issue and construes this language in the disjunctive. *See, e.g., U.S. v. Fleet Factors Corp.,* 901 F.2d 1550, 1554 n. 3 (11th Cir.1990),

*cert. denied,* —— U.S. ——, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991); *United States v. Maryland Bank & Trust Co.,* 632 F.Supp. 573, 577–78 (D.Md.1986). This accords with CERCLA's legislative history and the structure of the statute (*e.g.,* the definition section of the statute only refers to the phrase "owner or operator", *see* 42 U.S.C. § 9601(20)(A), as does § 9607(a)(2)).

### A. Wedzeb's and Daniels' Defenses to Liability

■ As already noted, § 9607(b) provides defenses to liability under § 9607(a). Wedzeb and Daniels argue that § 9607(b)(3) shields them from liability because the fire which caused the release of hazardous substances occurred due to an act of a third party, and because they took reasonable precautions to secure the site.[9] Specifically, the Defendants argue that children caused the fire, and that vagrants or children had been using the building for parties and sleeping. *See Report of Suspicious or Incendiary Commercial Fire, Assistant Chief Williams,* at K–A–4. The Defendants also contend that they exercised due care because they inspected the premises every morning and evening, and had made arrangements prior to the fire for an alarm company to install a security system. *See Daniels Deposition,* 4/29/92, at 81–82.

The Government replies that the Defendants' liability under CERCLA is based not just on releases that occurred at the site on May 2, 1981, but for all releases that occurred from the time Wedzeb and Daniels first disposed of hazardous substances at the site, continuing through at least September 30, 1987, when EPA finished its removal action. The Government also contends that the Defendants cannot show that the third party or parties alleged to have caused the May 2, 1981, fire were the sole cause of the release or threatened release of hazardous substances at the site.

■ Whether releases of hazardous substances occurred at the site prior to May 2, 1981, or whether a third party or parties were the *sole cause* of any releases after that date are issues of fact which remain in dispute. The resolution of these issues is significant because if there were multiple causes of the release or threat of release, then § 9607(b)(3) is not applicable. *See*

*U.S. v. Stringfellow,* 661 F.Supp. 1053, 1061 (C.D.Cal.1987). Conflicting testimony has been offered regarding whether the capacitors were leaking when they were transported and stored at the site prior to the fire. *See Joseph Cleary Deposition, 1/30/92,* at 30–34; *Affidavit of Kenneth I. Booher,* at ¶ 2; *Affidavit of Ronald Lee Sullivan,* at ¶ 5. Because no evidence has been adduced that precisely identifies the cause of the releases that are at issue in this case, the Court cannot say as a matter of law that they would have occurred at the site even if the fire had not occurred (*i.e.* that there were multiple causes of the release).

Obviously, the fire caused significant releases of hazardous substances into the environment, which may have been the singular act of children or vandals. If that is true, and the fire alone is what ultimately led to the site's contamination, the Defendants could avail themselves of § 9607(b)(3). But the fact that a child may have lit the match and thrown it to the warehouse's floor does not conclude the inquiry into the origin of the fire for purposes of this motion. If Wedzeb and Daniels saturated the floor with flammable liquid and left the door open to vandals, should they then be able to deny their contribution to any ensuing fire? Hardly. This is why the defense in subsection (b)(3) includes a requirement that the defendant exercise due care with respect to the hazardous substance and take precautions against foreseeable acts or omissions of third parties.

Whether there were other contributing factors that led to the site's contamination that exist independently of the fire is unclear. Certainly, if releases were occurring prior to the events of May 2, 1981, the inferential leap required to find that they occurred after that date is a small one. For the Court to reach any conclusion on

---

**9.** To establish a defense under § 9607(b)(3), the defendant must demonstrate that: (1) the third party was not an employee or agent of the defendant; (2) the acts or omissions of the third party did not occur in connection with a direct or indirect contractual relationship to the defendant; (3) a third party was the sole cause of the release or threatened release of hazardous substances; (4) the defendant exercised due care with respect to the hazardous substances and took precautions against foreseeable acts and omissions of the third party. *See Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439,· 1446 (W.D.Mich.1989).

these matters, though, would require it to abandon its appointed role in ruling on a motion for summary judgment. Whether a third party was the sole cause of the fire, or, ultimately, the sole cause of the release of hazardous substances which now contaminate the site, can only be decided by considering the credibility of witnesses and weighing the evidence regarding the source of the contamination, functions which are wholly within the province of the trier of fact. The Court's duty in this matter is far more modest: to determine whether there are triable issues for a jury to resolve. There being no showing on the Government's part that "there is an absence of evidence to support the nonmoving party's case", *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554, that the Defendants have no evidence which would allow them to take refuge in the defenses that CERCLA furnishes, the Court must deny the Government's motion for summary judgment. Because the Court reaches this result based on the existence of factual disputes surrounding the availability of the defense contained in § 9607(b)(3), it must also reject the Government's argument concerning the imposition of penalties pursuant to §§ 9606(b)(1) and 9607(c)(3), as these provisions contain a good faith defense, *supra*.

### III. *The Manufacturing Defendants' Motion for Summary Judgment*

■ The Manufacturing Defendants move for summary judgment on the issue of their liability under § 9607(a)(3).[10] To establish such liability, the Government must show that: (1) the Manufacturing Defendants were persons within the meaning of the statute; (2) they owned or possessed hazardous substances; (3) by contract, agreement or otherwise, they arranged for the disposal or treatment of those wastes at a facility; (4) a release or threatened release of a hazardous substance at the site occurred; and (5) response costs were incurred as a result of the release of threat-

ened release. *See C. Greene Equipment Corp. v. Electron Corp.*, 697 F.Supp. 983, 986 (N.D.Ill.1988). Of these elements, the only one which remains in dispute in number three.

CERCLA defines "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity . . . . or any interstate body." 42 U.S.C.A. § 9601(21) (West Supp.1992). All of the Manufacturing Defendants fall within this definition. In addition, they all sold or gave capacitors which contained PCBs to Wedzeb, and, as noted *supra*, a release or threatened release of a hazardous substance occurred at the site, resulting in the U.S. Government having to incur response costs to clean it up. The only remaining issue, then, is whether the Manufacturing Defendants "arranged for the disposal or treatment" of hazardous substances within the meaning of the Act.

Not surprisingly, the parties have diverging views on this question. The Manufacturer Defendants argue that "arranging for disposal" does not encompass the act of selling a product that happens to contain a hazardous substance. They bring a number of cases to the Court's attention, including *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313 (11th Cir. 1990), where the court explained: "[I]f a party merely sells a product, without additional evidence that the transaction included an "arrangement" for the ultimate disposal of a hazardous substance, CERCLA liability would not be imposed. *See, e.g., United States v. Westinghouse Electric Corp.*, 22 Env't Rep. (BNA) 1230, 1233 (S.D.Ind.1983)." *Id.* at 1317. This decision echoed the ruling in *Westinghouse*, which was decided by Judge Holder, where the court held that Monsanto's sales of PCB products to Westinghouse for use in manufacturing electrical equipment did not subject Monsanto to liability under § 9607(a) of CERCLA.

---

**10.** That section provides:

(3) any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person,

by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . . .

42 U.S.C. 9607(a)(3).

The United States argues that the sales of PCB laden capacitors to Wedzeb were sales in name only, and that the Court should not rely on the Manufacturing Defendants' characterizations of the transactions in question. Instead, the Government contends that the Manufacturing Defendants did nothing more than "get rid of" of their PCB capacitor inventory, which was "obsolete," "surplus," "salvage," and "disposal material." *United States' Supplemental Memorandum in Opposition to Defendants General Electric, et al.'s Motion for Summary Judgment*, at 26. The Government asks the Court to consider the extraordinary nature of the Manufacturing Defendants' transactions with Wedzeb, in that, *inter alia*, Wedzeb did not have an ongoing business relationship with the Manufacturing Defendants, their sale of capacitors was at deep price reductions and made only after exhausting opportunities in other markets, and Wedzeb took the capacitors without warranty and with no chance to inspect them on receipt, or return them afterwards. Based on these facts, the Government argues that the Manufacturing Defendants "arranged for the disposal" of the capacitors rather than conduct bona fide sales of them.

■ CERCLA adopts the definition of disposal used in the Solid Waste Disposal Act, 42 U.S.C. § 6903:

[t]he term disposal means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on the land or water so that such solid waste or hazard-

ous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3) (footnote added).[11] The parties have put forward lengthy arguments concerning how this definition should be applied in the instant action, and, though informative, these arguments underemphasize the primary consideration which must control the Court's decision whether to grant or deny the Manufacturing Defendants' motion for summary judgment: the state of the facts. As each side heaped legal argument atop legal argument, the wisdom of so simple an observation as that made by the Eleventh Circuit Court of Appeals in *Allis Chalmers, supra*, that "[w]hether an 'arrangement for' disposal exists depends on the facts of each case", 893 F.2d at 1317–18, was lost. That court's guidance is especially relevant at the summary judgment stage, where the Court's duty is directed toward "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (1986).

■ Whether the Manufacturing Defendants "disposed" of the PCB laden capacitors is a fact specific determination which the parties contest. On a motion for summary judgment, it clearly is beyond the

---

11. CERCLA also adopts the definition of "hazardous waste" used in the Solid Waste Disposal Act, 42 U.S.C. § 6903:

(5) The term "hazardous waste" means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—

(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 9601(29).

That Act defines "solid waste" as:

(27) The term "solid waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, or source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended (68 Stat. 923) [42 U.S.C.A. § 2011 et seq.].

42 U.S.C. § 6903(27).

Court's appointed role to make this evaluation where, as here, it entails qualitative assessments of the disputed characteristics of products that were exchanged—assessments that necessitate examining the credibility of witness and other evidence. The need for such an examination comes from the language of CERCLA itself; before a transaction can be classified as a "disposal", the material exchanged must be a "hazardous waste".[12] A substance is a "hazardous waste" if it is a "solid waste",[13] which includes "garbage" and "refuse", *supra.* The Court is unable to say one way or another whether the capacitors or other gear that Wedzeb purchased fit such a definition because the record is ambiguous. In this regard, both sides urge upon the Court constructions of the facts which provide a veneer of uniformity to the transactions that probably isn't warranted. It is highly unlikely, for example, that the capacitors in each and every lot that Wedzeb purchased had the same characteristics or utility. It may be, for example, that one defendant sold Wedzeb capacitors that were useful or usable (*i.e.* not refuse), thereby removing them from the definition of "hazardous waste", while another defendant sold them obsolete or nonfunctioning gear. Or perhaps a particular transaction amounted to nothing more than Wedzeb accepting the good with the bad, salvaging what it could for resale. The Court will not embark on an expedition which logical-ly would culminate in the task of weighing the evidence and making credibility assessments regarding the respective transactions, let alone adopt such a categorical approach to evidence which may be highly dissimilar.

▅▅▅ The fact that the capacitors were sold to Wedzeb should not be given a kind of talismanic significance for purposes of affixing a particular CERCLA definition to them. As the Court in *Prudential Insurance Co. v. U.S. Gypsum*, 711 F.Supp. 1244 (D.N.J.1989), explained:

> Merely characterizing the transaction as a sale, however, is insufficient to avoid liability. (citation omitted). Rather, if the transaction involves, for example, sale of a new useful product containing a hazardous substance, as opposed to the sale of a substance merely to "get rid of it," a claim under CERCLA may not be available.

*Id.* at 1254.[14] In the same way, an otherwise useless product that, for whatever reason, had value to an individual purchaser could not escape classification as "refuse" or "garbage" simply because someone was eccentric enough to buy it. The assessment is an objective one according the plain meaning of the definitions that CERCLA provides, *supra.* This accords with CERCLA's strict liability scheme, which focuses on objective evalua-

---

**12.** The Government argues that the reference in § 9607(a) to the "disposal of *hazardous substances*" should override CERCLA's definition of "disposal", which only applies to *"hazardous wastes."* The Court will not read into the statute a meaning which is contrary to its plain language. The Congress in CERCLA specifically adopted the definition of "disposal" used in the Solid Waste Disposal Act: "The terms "disposal," "hazardous waste," and "treatment" shall have the meaning provided in section 1004 of the Solid Waste Disposal Act [42 U.S.C. 6903]." 42 U.S.C. § 9601(29). If the Congress intended a different meaning for "disposal" than that found in the SWDA, it would not have written subsection 29 as it now appears. Its decision to adopt the SWDA definition is not without a plausible rationale. It may be, for example, that Congress used a definition of "disposal" which incorporated the term "hazardous waste" as a way of avoiding constructions which relied on usages, such as a "transfer" or "settling af-

fairs", *see* Webster's New World Dictionary 422 (College Edition 1957), that would give § 6903(3), the SWDA's definition of "disposal", extremely broad application. *See generally 3550 Stevens Creek Assoc. v. Barclays Bank*, 915 F.2d 1355, 1361–62 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991). In this way, it would prevent liability from attaching in situations where a product containing a "hazardous substance" was exchanged, such as in a sale, though not "disposed" in the manner associated with waste.

**13.** Regulations issued by EPA similarly define "solid waste" as "any discarded material" which is "abandoned, ... recycled, ... or inherently wastelike." 40 C.F.R. § 261.2(a).

**14.** This would be true even if the material was given away. If it is not a "hazardous waste", § 6903(3) does not apply.

tions and not on the parties' knowledge or intent.

■■■■■ A similar fact-specific analysis applies in determining whether the transactions in question fit the remaining requirements of § 6903(3) and whether the Manufacturing Defendants "arranged for" the disposal of the capacitors according to § 9607(a)(3). The Court will not adopt per se rules leading to CERCLA liability. *See, e.g., Florida Power and Light*, 893 F.2d at 1318 ("We reject any attempt to establish a *per se* rule in determining a manufacturer's liability under CERCLA. We find that any such rule would frustrate CERCLA's remedial purpose. It would also be contrary to prevailing case law."). The fact that many of these transactions involved sales by itself resolves nothing. The inquiries regarding §§ 6903(3) and 9607(a)(3) build on the facts established concerning the nature of the material exchanged, and should not be made in isolation from those findings.[15] Given this interrelationship, the Court must leave it to the trier of fact to determine whether the Manufacturing Defendants "arranged for the disposal" of the electrical gear in question and are subject to liability under the Act.

### IV. *Exhibits 6 and 7 of the Carroll Declaration*

■■■■ Pursuant to Fed.R.Civ.Proc. 56(e), the Manufacturer Defendants have pre-

sented the Court with a motion to strike Exhibits 6 and 7 of the Declaration of Thomas P. Carroll from the summary judgment record because they are unsworn, unauthenticated transcripts of interviews with James Cleary and Joseph Cleary. This motion is moot for two reasons. First, the Court has not considered them in ruling on any of the motions before it, and second, James Cleary and Joseph Cleary were properly deposed at a later date and testified to many of the same matters that were at issue in their earlier statements. The Court has only considered the evidence that appears in the depositions. The Manufacturer Defendants have offered no reasons why the depositions should be struck, so they will remain in the record. The Court need not reach the issue whether the Clearys "verified" or "adopted" the contents of Exhibits 6 and 7 in their respective depositions, because the Court never looked beyond the four corners of the depositions in examining the evidence.

### V. *Westinghouse*

#### A. The United States' Motion to Strike Westinghouse's Defenses

Westinghouse initially tendered seven (7) affirmative defenses in its Answer to the Government's Complaint. Shortly after the United States asked the Court to strike four (4) of these defenses, Westinghouse withdrew two (2) of them voluntarily,[16]

---

**15.** For example, courts examining this issue typically have made a distinction between: (1) the sale of products that can be used for their usual and customary purpose, *see, e.g., Florida Power and Light Co.,* 893 F.2d at 1315; *Prudential Insurance Co.,* 711 F.Supp. at 1254; *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 657 (N.D.Ill.1988); and (2) the sale of used products without a customary commercial use for a purpose different from that for which they were manufactured. *See, e.g., United States v. A.F. Materials Co.,* 582 F.Supp. 842 (S.D.Ill.1984); *United States v. Ward,* 618 F.Supp. 884 (E.D.N.C.1985); *New York v. General Electric Co.,* 592 F.Supp. 291 (N.D.N.Y.1984). In the latter group of cases, the sale of the product has not defeated CERCLA liability. Because the factual record in this case is in dispute, the Court, even if it so desired, could not resolve the issue whether the Manufacturer Defendants "arranged for" the disposal of the capacitors by relying on these distinctions. Both inquiries involve factual determinations which

follow from the threshold decision whether the products are something besides "garbage" or "refuse", or any other element of "hazardous waste". The Court will leave that question to the trier of fact. In addition, it can see no reason to extend the inquiry concerning whether a sale constitutes "arranging for disposal" under the Act to include anything more than an examination of the product's utility and the existence of a viable market for it. Hence, the sale of a useful product, even though it contains a hazardous substance, for which a market exists, would not constitute a "disposal", and could not therefore subject the seller to CERCLA liability. *See, e.g., Prudential Insurance Co.,* 711 F.Supp. at 1254 ("[T]he sale of a hazardous substance for a purpose other than its disposal does not expose defendant to CERCLA liability.").

**16.** In withdrawing these defenses, Westinghouse specifically reserved the right to raise them by motion at a later time. Fed.R.Civ.P. 12(h)(2) allows Westinghouse to preserve its legal de-

leaving two (2) defenses in dispute: these are (1) that the doctrine of laches bars the U.S. from bringing its claims, *see Answer of Defendant Westinghouse,* at 9, and (2) that "Westinghouse is entitled to an apportionment of the damages and is liable at most only for that portion of the harm, if any which it caused". *Id.* The Government argues that these defenses are deficient as a matter of law and should be struck; Westinghouse apparently believes that there is some merit in them though it has not provided the Court with the reasons for its faith.

▆▆▆▆ One place that might provide some guidance on these issues is the language of CERCLA itself. Although this approach may seem ordinary, the Court can find no reason to extend its legal analysis beyond the statute if it alone settles the matter. Section 9607(a), which sets forth the parameters of CERCLA liability, begins with the following: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section...." These words mean just what they say—if there are any legal defenses to CERCLA liability, including equitable defenses, they are found in subsection (b). Not surprisingly, the majority of courts have reached the same conclusion.[17] Laches is not listed in subsection (b). It is not a defense to CERCLA liability and will not keep the United States from bringing its claims. If Westinghouse had legitimate arguments to present concerning why the Court should disregard the plain meaning of the Act and

ignore the overwhelming weight of authority interpreting §§ 9607(a) & (b), it should have spoken up.[18] Instead, Westinghouse urges the Court not to grant the Government's motion because it was not filed in a timely fashion, and, in any event, to defer ruling on the issue until after a determination has been made concerning "the primary liability issue in this case." *Westinghouse's Response to Plaintiff's Motion to Strike,* at 3. The Government's delay in filing its motion does not prevent the Court from acting on its own initiative and striking any insufficient matter, however. *See* Fed.R.Civ.P. 12(f). The Court finds no merit at all in Westinghouse's attempted reliance on the doctrine of laches. There is also no justification for being tardy in getting rid of it; Westinghouse's affirmative defense based on the doctrine of laches is accordingly.[19]

▆▆▆▆ The second disputed defense really isn't a defense at all. Westinghouse argues that the damages should be apportioned because the harm at the site is divisible. Although liability under CERCLA typically is joint and several, if the harm is divisible, liability may be imposed against a responsible party in proportion to the damage that it actually caused. *See, e.g., United States v. Aceto Agricultural Chemicals Corp.,* 872 F.2d 1373, 1377 (8th Cir.1989). The burden of showing that the harm is divisible rests with the defendant. *Monsanto,* 858 F.2d at 172. Westinghouse may or may not be able to meet this burden, and the Court can find no reason that would

---

fenses. Of course, this Court will not hesitate to strike any defenses that are frivolous or insufficient as a matter of law no matter when they are brought. Fed.R.Civ.P. 12(f). In addition, the Court also notes that:

> The signature of an attorney or party constitutes a certificate by the signed that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry *it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* ...

Fed.R.Civ.P. 11 (emphasis added).

**17.** See cases cited in *Kelley,* 714 F.Supp. at 1445 n. 3.

**18.** While some courts have held that the defenses listed in § 9607(b) do not foreclose the availability of equitable defenses, *see, e.g., United States v. Mottolo,* 695 F.Supp. 615, 626–27 (D.N.H.1988), *United States v. Hardage,* 116 F.R.D. 460, 465 (W.D.Okla.1987), this Court can find no reason to deviate from the majority rule.

**19.** Equitable defenses, such as laches, typically may not be asserted against the Government when it acts in its sovereign capacity to protect the public welfare. The extremely limited circumstances which would allow for its application are not present in this case. *See, e.g., U.S. v. Lindberg Corp.,* 882 F.2d 1158, 1163 (7th Cir. 1989), *citing, Woodstock/Kenosha Health Center v. Schweiker,* 713 F.2d 285, 290 (7th Cir.1983).

foreclose it from trying. Its argument is not insufficient as a matter of law, and it does not fall into one of the categories of matters listed in Fed.R.Civ.P. 12(f) that may be stricken. In these circumstances, it would be inappropriate to grant the Plaintiff's motion as it relates to the apportionment of damages.

### B. Westinghouse's Motion for Summary Judgment

According to Westinghouse, its "motion seeks summary judgment on virtually identical factual and legal grounds" as the Manufacturer Defendants. *Memorandum of Westinghouse Electric Corporation in Support of its Motion for Summary Judgment,* at 2. The Court must deny Westinghouse's motion for the same reasons that it must deny the Manufacturer Defendants' motion: there remain factual issues in dispute concerning whether Westinghouse's sale of electrical gear to Wedzeb constituted a disposal within the meaning of the Act. Westinghouse contends that it sold new, usable components to Wedzeb, for which there was a bona fide resale market. *See id.* at 4, 7; *Findings of Undisputed Fact and Conclusions of Law on Motion for Summary Judgment of Defendant Westinghouse Electric Corporation,* at ¶ 6. The Government disputes this finding, and argues that the capacitors were nothing more than "scrap", and that some of the Westinghouse capacitors were damaged and leaking. *See United States' Memorandum in Opposition to Defendant Westinghouse Electric Corporation's Motion for Summary Judgment,* at 2, 8; *Affidavit of Ronald Lee Sullivan,* at ¶ 4. Given these factual discrepancies, summary judgment in not appropriate, and Westinghouse's motion must be denied.

### CONCLUSION

For the forgoing reasons, the Government's motion for summary judgment is denied, the Manufacturer Defendants' motions are denied, the Government's motion to strike defenses of Westinghouse is granted in part, and the motion of Westinghouse for summary judgment is denied.

It is so ORDERED.