Joel G. FREEMAN, Paul D. Freedman, Freeman Industries, Inc., and Freeman Realty Associates, L.P., Third–Party–Plaintiffs–Appellants,

v.

GLAXO WELLCOME, INC., Third–Party–Defendant–Appellee.

Docket No. 98–9508.

United States Court of Appeals, Second Circuit.

Argued: June 30, 1999.

Decided: Sept. 16, 1999.

Christopher R. Carpentieri, C.R. Carpentieri, P.C., New York, NY, for third–party–plaintiffs–appellants.

Robert M. Hallman, Cahill Gordon & Reindel, New York, N.Y. (Jennifer J. Barrett, of counsel), for third–party–defendant–appellee.

Before: KEARSE, STRAUB, and POOLER, Circuit Judges.

STRAUB, Circuit Judge.

Third–Party–Plaintiffs–Appellants Joel G. Freeman, Paul D. Freedman,[1] Freeman Industries, Inc. ("FII"), and Freeman Realty Associates, L.P., appeal from a judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*), granting summary judgment dismissing their complaint on the ground that Third–Party Defendant Glaxo Wellcome, Inc. ("GWI") is not a responsible party liable for contribution under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* The appellants contend that the District Court erred in holding that, as a matter of law, GWI did not

---

1. Although Joel Freeman and Paul Freedman use different surnames, they are brothers. For simplicity and because "Freeman" appears in the name of their company, we refer to the brothers collectively as the "Freemans" throughout.

"arrange[ ] for disposal ... of hazardous substances" within the meaning of § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), when it sold unused chemicals from its laboratories to FII. We disagree and, for the reasons that follow, affirm.

## BACKGROUND

Established in the 1950s, FII is a small company run by Joel Freeman and his brother Paul. FII's primary business is the manufacturing and processing of vitamin concentrates and related bulk line additives for the food and dairy industries, but in the late 1960s, the Freemans decided to expand the scope of FII's business to include the purchase and resale of chemical intermediates. FII's facility has always been in Tuckahoe, New York, which until 1970 was also home to a pharmaceutical research and development facility of GWI.[2] Due to the proximity of the two businesses, Walter Ide, a GWI employee, would frequently stop by the FII facility and, thus, became familiar with FII and the Freemans.

In 1970, GWI decided to relocate its facility to North Carolina. According to Joel Freeman:

> Walter Ide approached FII and stated that [GWI] would be relocating and offered FII all of the chemical reagents from [its] laboratories rather than worry about the legal requirements in transporting them to North Carolina. [GWI] felt that it would be better to just get rid of the reagents and start fresh.

Joel Freeman inspected the chemicals before accepting GWI's offer on behalf of FII. According to the appellants, FII purchased the chemicals "both for use in the Freeman laboratories and for resale." Although in some cases the containers in which the chemicals were sold had been opened, the chemicals contained in them at the time of sale had not been used. FII paid GWI $674 for the inventory, an amount that the appellants contend was only a fraction of the chemicals' retail value at the time of the sale.

After retrieving the chemicals from GWI's facilities and transporting them to FII's facilities, FII employees sorted the chemicals by categories and stored them in a laboratory, a vault, and a forty-foot box trailer. FII subsequently used some of the chemicals it had purchased for its own production and research and development. FII also sought to market the GWI chemicals. Within two months of FII's purchase, a chemical resale company offered to buy the entire inventory for $1000, but Joel Freeman rejected the offer because he felt that the chemicals' retail value was greater. FII subsequently prepared and distributed a sales catalogue listing the manufacturer and technical grade of each chemical that it had purchased from GWI. As a result of its marketing efforts, FII sold some of the chemicals to local schools and companies. However, after 1975, FII made no systematic efforts to sell the chemicals, and few sales of the remaining chemicals were made.

In 1993, the United States Environmental Protection Agency determined that the chemicals from GWI that remained in FII's vault and box trailer represented a release or threatened release of hazardous substances. The EPA promptly initiated a removal action pursuant to CERCLA. In connection with the EPA's investigation, FII represented to the EPA that the chemicals purchased from GWI were "virgin chemicals ... and were not wastes."

In March 1996, the EPA commenced this action to recover its response costs from the Freemans, FII, and Freeman Realty Associates, L.P. In June 1996, the appellants filed an answer with counterclaims and commenced a third-party action for contribution against GWI pursuant to

---

2. In 1970, the facility was owned by Burroughs Wellcome & Co. ("BWC"). GWI was formed through the merger of BWC and Glaxo, Inc., sometime after 1970. For simplicity, we refer to both GWI and its predecessor BWC as "GWI" throughout.

CERCLA § 113(f), 42 U.S.C. § 9613(f). The appellants alleged that GWI was liable as a responsible party under CERCLA because it had "arranged for disposal" of the chemicals within the meaning of CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3). After answering the third-party complaint and concluding discovery, GWI moved for summary judgment on the ground that it had not "arranged for disposal" of any hazardous substances. By memorandum and order dated April 1, 1997, the District Court granted GWI's motion. The remaining issues were settled by the United States and the appellants pursuant to a consent decree filed in the District Court on October 19, 1998. This timely appeal of the District Court's grant of summary judgment ensued.

## DISCUSSION

The appellants argue that the District Court erred in granting summary judgment dismissing their third-party complaint for contribution based on CERCLA liability. "We review a district court's grant of summary judgment *de novo,* construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998) (citation omitted). We will affirm if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

 Congress enacted CERCLA to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, 94 Stat. 2767, 2767 (1980). "It was Congress' intent that CERCLA be construed liberally in order to accomplish [the statute's] goals." *General Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 285 (2d Cir.1992) (per curiam). CERCLA § 113(f)(1) authorizes "[a]ny person" to

"seek contribution from any other person who is liable or potentially liable under [CERCLA § 107(a) ]." 42 U.S.C. § 9613(f)(1). Thus, "[t]he elements of an action under § 113(f)(1) are the same as those under § 107(a)." *Bedford Affiliates v. Sills,* 156 F.3d 416, 427 (2d Cir.1998). Specifically, to establish a prima facie case of liability, a plaintiff must show that (1) the site is a "facility" as defined in CERCLA, (2) a release or threatened release of a hazardous substance has occurred, (3) the release or threatened release has caused the plaintiff to incur response costs that were necessary and consistent with the National Contingency Plan set up by CERCLA, and (4) the defendants fall within one or more of the four classes of responsible persons described in CERCLA § 107(a). *See id.; General Elec. Co.,* 962 F.2d at 285; 3550 *Stevens Creek Assocs. v. Barclays Bank,* 915 F.2d 1355, 1358 (9th Cir.1990), *cert. denied,* 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991); *United States v. Aceto Agr. Chemicals Corp.,* 872 F.2d 1373, 1378–79 (8th Cir.1989).

The only issue raised on this appeal is whether the District Court erred in determining that, as a matter of law, GWI is not a responsible party liable for costs under CERCLA. Section 107(a) authorizes suit against the following four classes of responsible parties:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another

party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....

42 U.S.C. § 9607(a). The appellants contend that a genuine issue of fact exists as to whether GWI "arranged for disposal ... of hazardous substances" within the meaning of § 107(a)(3) by selling its chemicals to FII. We disagree.

■ We begin by analyzing the terms of § 107(a)(3). Congress expressly incorporated into CERCLA the definition of "disposal" from the Solid Waste Disposal Act. *See* 42 U.S.C. § 9601(29). Under that definition, "disposal" includes "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land.... so that [it] may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3). Because the definition of "disposal" refers to "waste," only transactions that involve "waste" constitute arrangements for disposal within the meaning of CERCLA. *See A & W Smelter & Refiners, Inc. v. Clinton,* 146 F.3d 1107, 1112 (9th Cir.1998); *see also 3550 Stevens Creek Assocs.,* 915 F.2d at 1362.

■ Although Congress did not provide any definition of "arranged for" in the statute, courts have uniformly held "that a waste generator's liability under CERCLA is not to be ... facilely circumvented by its characterization of its arrangements as 'sales'," *State of New York v. General Elec. Co.,* 592 F.Supp. 291, 297 (N.D.N.Y.1984); *see also Aceto Agr. Chemicals Corp.,* 872 F.2d at 1381, and that, as a general matter, "[w]hether an 'arrangement for' disposal exists depends on the facts of each case," *Florida Power & Light Co. v. Allis*

*Chalmers Corp.,* 893 F.2d 1313, 1317 (11th Cir.1990); *see also Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R. Co.,* 142 F.3d 769, 775 (4th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998). Nevertheless, "[i]f a party merely sells a product, without additional evidence that the transaction includes an 'arrangement' for the ultimate disposal of a hazardous substance, CERCLA liability [will] not be imposed." *Florida Power & Light Co.,* 893 F.2d at 1317.

Applying these principles, we conclude that there is no genuine issue of fact as to whether GWI "arranged for disposal ... of hazardous substances." The appellants concede that FII bought the chemicals for its own use and for resale and, by FII's own representation, the chemicals were virgin and not waste at the time that FII purchased them. There is no evidence in the record before us to support an inference that the transaction at issue was anything more than a sale; to the contrary, it is uncontroverted that GWI merely sold unused chemicals that it would ordinarily use in its laboratories to FII so that FII could use or resell them in their unadulterated form. On this record, the District Court properly concluded that GWI had not "arranged for disposal ... of hazardous substances" as a matter of law. *Cf. AM Intern., Inc. v. International Forging Equipment Corp.,* 982 F.2d 989, 992, 999 (6th Cir.1993) (concluding that a transfer of chemicals as part of a bulk sale of assets on an "as is, where is basis" was not an arrangement for disposal where the chemicals were useful and valuable and the parties intended that they would be used in a particular manner); *C. Greene Equipment Corp. v. Electron Corp.,* 697 F.Supp. 983, 987 (N.D.Ill.1988) (dismissing on summary judgment a complaint against a company that sold used electronic equipment later found to be contaminated with PCBs where the only evidence presented indicated that the motivation for the sale was to make space available for the company's expansion). Accordingly, GWI is not a

responsible party liable for costs under CERCLA.

## CONCLUSION

The judgment of the District Court is affirmed.