**UNITED STATES of America,**
**Plaintiff,**

v.

**ALLIEDSIGNAL, INC. and Amphenol**
**Corp., Defendants.**

**Alliedsignal, Inc. and Amphenol Corp.,**
**Third–Party Plaintiffs,**

v.

**Town Of Sidney, New York, Village of Sidney, New York, Town of Masonville, New York, and Town of Tompkins, New York, Third–Party Defendants.**

**No. 97–CV–0436.**

United States District Court,
N.D. New York.

Oct. 29, 1999.

Whiteman, Osterman Law Firm, Albany, NY, Philip H. Gitlen, of counsel, for Defendants.

Young, Ritzenberg Law Firm, Executive Woods, Albany, NY, Kevin M. Young, Kristin Carter Rowe, of counsel, for Third–Party Defendants,

### MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

The United States of America commenced the instant litigation against defendants Alliedsignal, Inc. and Amphenol, Corp., as successors in interest of the Bendix Corp. (collectively "Alliedsignal" or "defendants"), pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9607 ("CERCLA"), seeking recovery of costs incurred by the United States with respect

to the release or threatened release of hazardous substances at or from the Sidney Landfill Superfund Site (the "SLF" or the "Site") located in the Towns of Masonville and Sidney, New York. Defendants, in turn, commenced a third-party action against the Town of Sidney, the Village of Sidney, the Town of Masonville, and the Town of Tompkins (collectively the "municipal defendants") seeking: (1) recovery for past and future response costs at the Site pursuant to 42 U.S.C. § 9607; (2) contribution for all past and future response costs pursuant to 42 U.S.C. § 9613, N.Y.C.P.L.R. § 1401, and common law; (3) indemnification; and (4) a declaratory judgment defining the future obligations of the parties.

The United States moved for entry of a Consent Decree between the United States and the municipal defendants and the municipal defendants moved pursuant to FED. R. CIV. P. 56 seeking dismissal of the Third–Party Complaint. By Memorandum–Decision & Order dated August 18, 1999, *see United States v. Alliedsignal, Inc.*, 62 F.Supp.2d 713 (N.D.N.Y.1999) ("MDO")[1], familiarity with which is assumed, the Court denied the government's motion for entry of a consent decree and denied the municipal defendants' motion for summary judgment.

Presently before the Court is the municipal defendants' motion for reconsideration and for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## I. DISCUSSION

### A. Rule 60(b)

■ The municipal defendants initially inquire whether the instant motion may be made pursuant to FED. R. CIV. P. 60(b). Notwithstanding some confusion among the Courts in this regard, this Court recently made it clear that Rule 60, by its plain terms, applies only to final judg-

ments, orders, or proceedings. *See* Fed. R.Civ.P. 60(b); *Franzon v. Massena Mem'l. Hosp.*, 189 F.R.D. 220, 223 (N.D.N.Y.1999); *see also Torres v. Chater*, 125 F.3d 166, 168 (3d Cir.1997) ("[T]he underlying order in the district court is purely interlocutory and, thus, not within the scope of Rule 60(b), which applies only to 'final' judgments and orders."). Because "[o]rders denying summary judgment are interlocutory in nature," *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 131 (2d Cir.1999), and, thus, not within the ambit of Rule 60(b), the municipal defendants may not seek relief pursuant to Rule 60(b).

### B. Reconsideration

On September 29, 1999, the municipal defendants filed the instant motion for reconsideration and for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). "The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 256 (2d Cir.1995). The municipal defendants claim that the Court erred because: (1) it wrongfully assumed, for purposes of its analysis, that the municipalities were liable for the disposal of municipal solid waste ("MSW") by their residents; (2) the Court wrongfully assumed that New York State's Part 360 regulations and post-closure costs associated with industrial hazard waste disposal sites would have governed the closure of the Sidney Landfill Site ("SLS" or the "Site"); (3) the Court failed to consider controlling Second Circuit law that an entity may not be held liable as an arranger unless it actually controlled or had an obligation to control hazardous

---

**1.** All references to the prior decision will be referred to as "MDO" followed by the West- law pagination, e.g. MDO at *1.

waste disposal; and (4) that the Court failed to consider the uncontroverted evidence that the municipalities did not effectively dictate where their residents' trash would be disposed. These are issues that the Court addressed in its prior MDO. The municipal defendants have not identified any data or controlling law that might reasonably be expected to alter that prior result. Accordingly, the municipal defendants will not be permitted to submit additional papers in support of their request for reconsideration.[2] The Court will, however, address the contentions raised by the municipal defendants in their current motion papers.

### 1. The Court's Analysis of the Proposed Consent Decree

The municipal defendants first contend that, in reviewing the proposed Consent Decree, the Court erroneously assumed that the municipal defendants would be liable for their residents' waste. The municipal defendants fault the Court for its statement that "[f]or the purposes of evaluating the Consent Decree only, the Court assumes, as do the parties, that the municipal defendants may be held liable as arrangers for their residents' waste at the SLF." MDO at *4 n. 5. According to the municipal defendants, a key premise for the low settlement figure in the Consent Decree was that there was a serious issue regarding their liability for waste disposed of by their residents at the SLF.

The Court's assumption came from the municipal defendants' own words. In its Reply Mem. of Law in Support of Plaintiff's Motion to Enter Consent Decree (Docket No. 63) at 4, the municipal defendants stated that:

The settlement amounts assume that each Municipality arranged for the disposal of their residents' MSW and that the residents used the Sidney Landfill from the day it opened to the day it closed.

Similarly, the amounts of waste attributed to each municipality were calculated based upon the total estimated disposal of MSW of both the businesses and residents of each town and not just that waste deposited by the municipalities themselves. *See* Mem. of the United States in Support of its Motion for Entry of Consent Decree with the Third–Party Defendants (Docket No. 57) at 9. There would be no reasonable basis for attributing those amounts of MSW to the municipal defendants in the proposed Consent Decree unless the parties assumed the municipal defendants to be liable, at least in part, for having arranged for the disposal of their residents' MSW at the SLF. The United States and the municipal defendants assumed, for purposes of the Consent Decree, that the municipalities arranged for the disposal of their residents' waste and so did the Court.

Moreover, in the analysis, the Court set aside the assumption and explained why it believed that "the Town of Sidney arguably is liable for having arranged for the disposal of Bendix's hazardous waste oils at the SLF." MDO at *8. A review of the prior MDO reveals that the Court found that a rational trier of fact could reasonably conclude that the Town of Sidney and the other municipalities arranged for the disposal of their residents' waste within the meaning of 42 U.S.C. § 9607(a)(3). *See* MDO at *8, *10–17. Thus, any assumption used by the Court would not have altered the analysis.[3] In fact, in its

---

2. The municipal defendants seek to supplement the affidavit of Susan McIntyre that was submitted in connection with the motion for summary judgment. The supplemental material does not consist of newly discovered evidence, but evidence that the municipal defendants failed to submit initially. A motion for reconsideration is not a device for offering evidence that should have, and could have,

been submitted in connection with the original motion for summary judgment.

3. The municipal defendants also question why "the Court never explained why the other municipalities should be tagged with industrial waste cleanup costs when Bendix is only identified as a resident of the Town of Sidney." Contrary to the municipal defendants'

final analysis of the proposed Consent Decree, the Court did not utilize any assumption that the municipal defendants were *liable* as arrangers, but did employ the assumption used by the municipal defendants that each municipality arranged for the disposal of their residents' MSW and that the residents used the Sidney Landfill from the day it opened to the day it closed. The Court stated that:

> Because there is ample evidence suggesting that the municipal defendants contributed the majority of the waste to the SLF; the volume and shallow depth of the waste is driving the need for four separate caps at the Site, rather than one; *the Town of Sidney may be held liable for having arranged for the disposal of waste oil at the SLF;* closure costs under New York State regulations may be more expensive than such costs under federal regulations; and because municipal waste can contain hazardous waste that, due to its greater volume and reduced toxicity, may cost more to clean than an industrial or commercial toxic waste site, the Court finds that the proposed Consent Decree does not apportion liability according to rational estimates of how much harm each PRP has done.

MDO at *9 (emphasis added) (citations omitted).

For similar reasons, the Court did take into account the risks of litigation in its evaluation of the Consent Decree. The Court understood the municipal defendants' argument that the settlement figures in the consent decree were low because of their belief that their liability as arrangers is tenuous. The municipal defendants' subjective belief as to their arranger liability, however, is irrelevant to whether the proposed settlement is reasonable.

The municipal defendants' argument is a double-edged sword that neither works in their favor nor against them. If there is a significant likelihood that the municipalities will not be found to be liable as arrangers, then, as they contend, their exposure is limited. This would justify a low settlement amount. If, however, it is likely that they would be found liable as arrangers, then they are subject to substantial liability. This would not justify a low settlement amount.

In its prior decision, the Court addressed the issue of whether the municipal defendants could be held liable as arrangers. Specifically, the Court stated:

> While the municipal defendants did not exercise control over individual residents' disposal of waste, did not collect residents' waste, and did not require residents to use the SLF, a trier of fact could conclude that the municipal defendants contracted with Rosa, Devere, and/or Bartlett to ensure that a landfill was available for their residents' use. Such action by the municipal defendants is certainly more hands-on than the mere promulgation of disposal regulations or permission of disposal facilities, which the Second Circuit has stated is insufficient to satisfy the requisite nexus. On the other hand, the municipal defendants' actions are seemingly less than that of the active management of disposal activities that would unquestionably establish a sufficient nexus. This, the Court finds itself in the badlands of judicial uncertainty.

MDO at *14 (internal citations omitted).

Just because the municipalities' liability (or lack thereof) was not crystal clear does not

---

suggestion, the Court did not "tag" the other municipalities with the Town of Sidney's potential liability. The Consent Decree would either pass or fail in its entirety. It is not the Court's function to rewrite the Consent Decree under terms it thinks are just or sever out portions that it disapproves. Although the other municipal defendants' liability may be significantly less than that of the Town of Sidney, the Court was presented with one Consent Decree for approval. The Court reviewed the proposed Consent Decree and, for the reasons stated in the prior MDO and herein, disapproved of it.

justify an extremely low settlement amount. As the Court noted, the municipal defendants fall into the middle of the spectrum of arranger liability. The Court explained why it believed the municipalities could be liable for having arranged for the disposal of their residents' waste at the SLF and, in particular, why the Town of Sidney could be liable for having arranged for the disposal of Bendix's waste oils at the SLF.[4] Accordingly, the risks of litigation was not, in the Court's opinion, a factor supporting the low proposed settlement amount. Rather, it was a neutral factor. Thus, the Court was not as convinced as the are the municipal defendants that they would not be held liable as arrangers.

In short, because the Court found that the municipal defendants could be held liable as arrangers, it did not find the proposed Consent Decree to approximate the municipal defendants' proportionate share of potential liability.[5] The Court further found that a better proposed settlement would have reflected the actual clean-up costs at the SLF (which were known at the time the proposed settlement was negotiated), rather than applying a generic number calculated in the Environmental Protection Agency's Policy for Municipality and Municipal Solid Waste CERCLA Settlements at National Priorities List Co–Disposal Sites.[6]

## 2. The Court's Analysis of Arranger Liability

The municipal defendants next contend that this Court erroneously applied Second Circuit precedent in *General Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281 (2d Cir.1992). In that case, the Second Circuit stated "this Court concludes that it is the *obligation* to exercise control over hazardous waste disposal, and not the mere ability or opportunity to control the disposal of hazardous substances that makes an entity an arranger under CERCLA's liability provision." 962 F.2d at 286 (emphasis in original). However, the municipal defendants selectively quote from that case without understanding its overall import.

In *General Electric,* the appellant "urge[d][the] court to read the phrase 'otherwise arranged' to include those entities that had the ability or authority to control the waste disposal practices of a third party, even though they never took part in the decision of how, when or where to dispose of the hazardous substance." *Id.* at 286. The Second Circuit rejected this interpretation of arranger liability. The Second Circuit stated:

Almost all of the courts that have held defendants liable as arrangers have found that the defendant had some actual involvement in the decision to dispose of waste. E.g., *United States v. Bliss,* 667 F.Supp. 1298, 1306 (E.D.Mo.1987) (defendant had "ultimate authority for decisions regarding disposal" and actively participated in the arrangement of transportation for hazardous substances); *United States v. Ward,* 618 F.Supp. 884, 894–95 (E.D.N.C.1985) (corporate officer who was personally involved in decision to dispose of hazardous substance was liable as an arranger even if he did not know where waste would be disposed of).

The few courts that have held an entity responsible as an arranger in the absence of actual involvement have found that nexus between the potentially liable

4. Contrary to the municipal defendants' assertion, if the Town of Sidney is found liable for having arranged for the disposal of waste oils at the SLF and it is this industrial waste that required re-closure of the SLF, 6 N.Y.C.R.R. Part 360 is applicable.

5. Even if the Court erroneously assumed the area to be capped to be seventy-four acres, instead of ten, the ultimate conclusion that the proposed settlement amount was insufficient to cap even one acre at the SLF stands. *See* MDO at *8.

6. In particular, there is evidence indicating that the actual cost of remediation per ton at the SLF is greater than $5.30. *See* May 12, 1999 Kolceski Aff.

party and the disposal of hazardous substances to be some obligation to arrange for or direct their disposal. *E.g., CPC International,* 759 F.Supp. at 1278 ("[t]he nexus issue is not a test of whether a party created or left hazardous substances or had title to them, but rather whether the party *assumed responsibility* for determining their fate"). 962 F.2d at 286 (emphasis in Second Circuit opinion). The essence of the Second Circuit's holding in *General Electric* was that, *absent active involvement,* a party may not be held liable as an arranger unless they had an obligation to exercise control over the hazardous waste disposal. *Id.; see Delaney v. Town of Carmel,* 55 F.Supp.2d 237, 261 (S.D.N.Y.1999).

As the Court previously stated, the municipalities' involvement here was more than an opportunity or ability to control a third party's waste disposal practices. *See* MDO at *14–16. Although they did not actively manage disposal activities at the SLF, a reasonable trier of fact could conclude that the municipal defendants had *active involvement* regarding the location and timing of disposal because the municipalities contracted to ensure that the SLF would be available for use by their residents during certain time periods. The fact finder also could reasonably infer from the 1964 contracts that the municipal defendants intentionally arranged for the disposal of hazardous substances at the SLF (Bendix's waste oils) [7], a fact that distinguishes this case from *Delaney,* 55 F.Supp.2d at 261–62; *see also Carter-Jones Lumber Co. v. Dixie Distrib. Co.,* 166 F.3d 840, 845 (6th Cir.1999) (intent is a question of fact); *United States v. Cello-Foil Prods., Inc.,* 100 F.3d 1227, 1231–32 (6th Cir.1996). These contracts could

demonstrate "active involvement" or otherwise provide the required nexus between the municipal defendants and the hazardous waste at the SLF. *See United States v. Arrowhead Ref. Co.,* 1993 WL 170966, at *6 (D.Minn. Mar.12, 1993) ("The necessary nexus is easily found in instances where a party took affirmative action which resulted in deposit ... at a site which ultimately resulted in release of the hazardous substance."); *see also Emergency Technical Servs. of Ill. v. Morton Int'l,* 1993 WL 210531 (N.D.Ill. June 11, 1993); *State of California v. Verticare, Inc.,* 1993 WL 245544, at *7 (E.D.Ca. March 1, 1993); *Transportation Leasing Co. v. State of California,* 861 F.Supp. 931 (C.D.Ca.1993); *United States v. Fleet Factors Corp.,* 821 F.Supp. 707, 724 (S.D.Ga.1993) ("Fleet 'arranged for' disposal through its agreements with Baldwin and Nix because those agreements necessarily contemplated the disposal of hazardous substances."); *Bliss,* 667 F.Supp. 1298. Even if individual residents retained the choice of whether to use the SLF, it should have been reasonably foreseeable to the municipal defendants that, as a result of their actions, their residents's waste, including hazardous waste, would be disposed of at the SLF. The municipal defendants knew and, in fact, intended, that their residents' waste would be deposited there. After all, that was the purpose of the contracts. *See, e.g.,* Rowe April 23, 1999 Aff., Ex. I ("WHEREAS the [Village and Town of Sidney] desire to contract ... for disposal ... of all garbage and refuse from the Town of Sidney and including the Village of Sidney."). Again, the trier of fact could reasonably conclude that the municipal defendants did not merely regulate waste disposal, permit disposal facilities, or acquiesce in the disposal of waste. There

7. The 1964 contract, which referred to depositing waste at the nearby Richardson Hill Landfill Site ("RHLS"), specifically included the deposit of waste oils from Bendix. During the term of this contract, the RHLS was closed and waste was sent to the SLF. New contracts were negotiated in 1970. It is unclear whether the 1970 contract pertains to depositing waste at the RHLS or the SLF. *See* MDO *2 n. 4. Also, the 1970 contract did not reference waste oil from Bendix and omitted the prohibition on individual and private dumping. *See id.* Thus, there is a question of fact whether the 1970 contract included the disposal of waste oils from Bendix at the SLF.

was no evidence presented to the Court that the municipal defendants main interest was in regulating the safe disposal of waste. Rather, the trier of fact could find that the municipal defendants, acting in their own economic interest, affirmatively sought out a site (the SLF) at which residents' waste could be deposited. As this Court previously held, this is an issue of fact best determined by the finder of fact.[8] *See Freeman v. Glaxo Wellcome, Inc.*, 189 F.3d 160, 164 (2d Cir.1999) ("[A]s a general matter, '[w]hether an "arrangement for" disposal exists depends on the facts of each case.'") (quoting *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990)).

Moreover, contrary to the municipal defendants assertion, whether the municipal defendants' subsidy actually caused certain residents to use the SLF is irrelevant. The Court listed the subsidy as one of several factors the trier of fact could consider in determining whether the municipal defendants did, in fact, arrange for the disposal of hazardous waste. What is relevant is that, regardless of the existence of other landfills in the area, the municipal defendants affirmatively undertook to secure the SLF for disposal of its residents' waste and intended for their residents to dispose of such waste at the SLF and hazardous waste was, in fact, deposited at the SLF.

For the foregoing reasons, the municipal defendants' motion for reconsideration is DENIED.

8. Contrary to the municipal defendants' selective quoting, the Court did not find that they "effectively dictated" where their residents' waste would be deposited. Instead, the Court stated that a "rational finder of fact could conclude that the municipal defendants ... effectively dictated where municipal waste would be disposed." The entire quote is as follows:

> Here, a rational finder of fact could conclude that the municipal defendants had sufficient control over the waste; that, although they were not obligated to exercise control over the hazardous waste disposal, they affirmatively undertook active involvement in seeking and securing a location for

## C. Motion for Interlocutory Appeal

The municipal defendants next seek an interlocutory appeal of the prior MDO pursuant to 28 U.S.C. § 1292(b). "Use of ... [the] certification procedure [pursuant to 28 U.S.C. § 1292(b)] should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996) (internal citations, quotations, and punctuation omitted); *see Franzon*, 189 F.R.D. at 223. The statute requires that three conditions be met prior to certifying a matter for appeal: (1) the order to be appealed must have involved a controlling question of law; (2) there must be a substantial ground for difference of opinion without respect to that controlling question of law; and (3) an immediate appeal is likely to materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

The municipal defendants argue that the controlling issue of law is "whether they can be held liable as arrangers under 42 U.S.C. § 9607(a)(3) for household trash generated by their residents where the municipalities subsidized or regulated a private landfill operation to make it available for permissive use by residents, but did not exercise any control over the selection of the hauler, collection of the trash, transportation of the trash, or the ultimate

> the disposal of such waste, *see General Electric*, 962 F.2d at 286; that by subsidizing the costs of disposal at the SLF, they effectively dictated where municipal waste would be disposed; that they had actual involvement in the decision to dispose of waste; or that there was otherwise a sufficient nexus with their residents to impose liability under § 9607(a)(3). *See Cadillac Fairview/California, Inc. v. United States*, 41 F.3d 562, 565 (9th Cir.1994) ("On a motion for summary judgment, the question is whether the fact-finder could infer from all the circumstances that a transaction in fact involves an arrangement for the disposal or treatment of a hazardous substance.").

disposal facility selected by their hauler." Third–Party Defendants' Mem. of Law in Support of Their Motion for Certification Pursuant to 28 U.S.C. § 1292(b) at 9.

■ While resolution of this issue is, indeed, important to the instant litigation, it appears that the municipal defendants really question whether the facts of this case are sufficient to impose arranger liability. *See In re Committee of Asbestos–Related Litigants,* 749 F.2d 3, 5 (2d Cir. 1984) ("[I]nterlocutory appeals of essentially factual questions are especially disfavored."). Whether the municipal defendants may be held liable as arrangers largely depends on the specific facts of the case to determine whether they had a sufficient nexus to the disposal of the hazardous waste. *See Freeman,* 189 F.3d at 164. This is an issue best resolved at trial where all the relevant facts can be elicited, rather than asking the Second Circuit to parse the record to ascertain whether there are genuine issues for trial. *See id.* Accordingly, the Court declines to certify the prior MDO for interlocutory appeal.

## II. CONCLUSION

For the foregoing reasons, the municipal defendants' motion for reconsideration and certification for interlocutory appeal is DENIED.

**IT IS SO ORDERED**