893 F.2d 1313
 31 ERC 1134, 58 USLW 2539, 15
Fed.R.Serv.3d 1331,
20 Envtl. L. Rep. 20,523
 FLORIDA POWER & LIGHT COMPANY, a Florida Corporation,
Plaintiff-Appellant,
v.
ALLIS CHALMERS CORPORATION, Central Moloney Inc., General
Electric Company, Kuhlman Electric Company, McGraw Edison,
Inc., R.T.E. Corporation, Wagner Electric Inc. and
Westinghouse Electric Corporation, Defendants-Appellees,
Pepper's Steel & Alloys, Inc., Intervenor-Appellant,
Norton Bloom, Thomas A. Curtis, William U. Payne, Flora B.
Payne and Lowell Payne, Intervenors.
 No. 88-5836.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 9, 1990.
 
 Norman A. Coll, Coll, Davidson, Carter, Smith, Salter & Barkett, Miami, Fla., for plaintiff-appellant.
 R. Hugh Lumpkin, Keith, Mack, Lewis, Allison & Cohen, Miami, Fla., William Michael Martin, Peterson & Bernard, Ft. Lauderdale, Fla., for Pepper's Steel & Alloy's.
 Stephen D. Ramsey, Sidley & Austin, Christopher L. Bell, Washington, D.C., Thomas M. Burke, Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, P.A., M. Steven Smith, III, Orlando, Fla., for General Elec.
 Love Phipps, Corlett, Killian, Hardeman, McIntosh & Levy, David McIntosh, Richard M. Leslie, Shutts & Bowen, Miami, Fla., for Allis Chalmers.
 David A. Baker, Foley & Lardner, Orlando, Fla., for Central Moloney, Inc.
 James M. Porter, Squire, Sanders & Dempsey, Miami, Fla., for McGraw Edison & Wagner Elec.
 R. Benjamine Reid, Kimbrell & Hamann, Miami, Fla., for Westinghouse Elec. Corp.
 Richard Fred Lewis, Magill & Lewis, Miami, Fla., for RTE Corp.
 H.G. Sparrow III, Detroit, Mich., for Kuhlman.
 David C. Shilton, Washington, D.C., for Amicus--U.S.
 Donald W. Fowler, Spriggs & Hollingsworth, Washington, D.C., for Amicus--Plac.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HATCHETT and EDMONDSON, Circuit Judges, DYER, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this appeal, we discuss the extent to which the manufacturer of a useful product, or any other party, may be liable, under the Comprehensive Environmental Response Compensation, and Liability Act (42 U.S.C. Sec. 9607(a)(3)), because the party "arranged for" the treatment or disposal of a hazardous substance. We affirm the district court.
 
 FACTS
 
 2
 Appellees, General Electric Company, Kuhlman Electric Company, McGraw Edison, Inc., R.T.E. Corporation, Wagner Electric, Inc., and Westinghouse Electric Corporation, (hereinafter "the manufacturers") manufactured transformers as part of their regular business operations. In accordance with their design, the transformers involved in this dispute contained mineral oil. Contrary to their design, however, the mineral oil contained traces of a hazardous substance, polychlorinated biphenyls ("PCB's").[1]
 
 
 3
 Florida Power and Light ("FP & L") purchased the transformers from the manufacturers and used them in the course of its business for about forty years. At the end of their useful life, FP & L sold the transformers to Pepper's Steel and Alloys, Inc. ("Pepper's") as scrap. Pepper's salvaged the transformers for recovery of various metals and oil at its disposal site in Medley, Dade County, Florida. At the time of purchase, Pepper's did not know that the transformers contained PCB-contaminated mineral oil. During Pepper's reclamation process, some of the PCB-contaminated oil spilled contaminating the Pepper's site. In 1983, the Environmental Protection Agency ("EPA") and the Florida Department of Environmental Regulations ("DER") sued Pepper's, FP & L, and other owners of the site for removal of the hazardous waste. See United States v. Pepper's Steel & Alloys, Inc., No. 83-1717 (S.D.Fla.). In 1985, the EPA filed another lawsuit against the same parties seeking recovery of response costs incurred by the EPA in connection with its investigation and removal of hazardous substances, including PCB's, from the Pepper's site and surrounding environment. See United States v. Pepper's Steel Alloys, Inc., No. 85-0571 (S.D.Fla.).
 
 PROCEDURAL HISTORY
 
 4
 In July, 1986, Pepper's and FP & L instituted this lawsuit. Count I of the complaint sought contribution from the manufacturers under the provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9607(a)(3). Approximately two years after Pepper's and FP & L filed this lawsuit, the district court granted summary judgment for the manufacturers.
 
 CONTENTIONS
 
 5
 Pepper's and FP & L contend that the district court erred in granting summary judgment for the manufacturers. Pepper's and FP & L also contend that had they been given additional time for discovery, they would have been able to establish that the manufacturers "arranged" for the disposal of the hazardous waste through sale of the transformers.
 
 
 6
 The manufacturers contend that because they did not dispose of the materials at the Pepper's site or participate in the disposal decision, they cannot be liable under CERCLA. The manufacturers further contend that even if CERCLA liability applies, the district court properly granted summary judgment in this case because no evidence indicates that they contracted, agreed, or otherwise arranged for the disposal of hazardous wastes.
 
 ISSUES
 
 7
 The issues are (1) whether the district court abused its discretion by denying Pepper's and FP & L additional time to conduct discovery, and (2) whether the district court properly granted summary judgment.
 
 DISCUSSION
 A. Standard of Review
 
 8
 We review the district court's denial of a Rule 56(f) motion under the abuse of discretion standard. See Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d 525 (11th Cir.1983). An order granting summary judgment is not discretionary. It must be independently reviewed by the court of appeals. Morrison v. Washington County, Alabama, 700 F.2d 678, 682 (11th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Consequently, this court must make a de novo and independent review of the district court's decision to grant summary judgment. Tackitt v. Prudential Insurance Co. of America, 758 F.2d 1572, 1574 (11th Cir.1985).
 
 B. Rule 56(f) Motion
 
 9
 In attacking the motion for summary judgment, Pepper's and FP & L argue that the sale transaction involved more than a mere innocent sale because the manufacturers knew the transformers contained PCB's at the time of sale. Consequently, Pepper's and FP & L contend that the transaction was an arrangement for the disposal of hazardous waste. While Pepper's and FP & L do not have any evidence or affidavits to support this contention, they assert that they would have been able to develop the necessary evidence if they had been allowed further discovery. Recognizing the need to furnish more than mere allegations to defeat the manufacturers' motion, Pepper's and FP & L filed a Fed.R.Civ.P. Rule 56(f) motion seeking additional time for discovery.[2]
 
 
 10
 "Subsection (f) allows a party who 'has no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof' ". Wallace, 703 F.2d at 527. It is clear that Pepper's and FP & L cannot " 'rest on vague assertions that additional discovery will produce needed, but unspecified facts,' but rather must specifically demonstrate 'how postponement of a ruling on the motion will enable [them], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' " Wallace, 703 F.2d at 527. "If the court is satisfied with the nonmovant's explanations, the court may deny the [summary judgment] motion without prejudice or may simply order a continuance." Wallace, 703 F.2d at 527.
 
 
 11
 In urging that we find an abuse of discretion, Pepper's and FP & L state that additional discovery will show that the manufacturers sold transformers containing hazardous waste rather than incur the expense of cleaning up and disposing of the hazardous waste themselves. They further state that Westinghouse and General Electric knew that the transformers would ultimately need routine maintenance or disposal which would likely result in a disposal of hazardous waste.
 
 
 12
 The district court is not required to await the completion of discovery before ruling on a motion for summary judgment. As this court has held, it would be inappropriate to limit summary judgment to cases where discovery is complete in light of the valuable role served by summary judgment and the commitment of discovery issues to "the sound discretion of the trial judge." Wallace, 703 F.2d at 528. Before entering summary judgment the district court must ensure that the parties have an adequate opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the record indicates that summary judgment was not granted until approximately two years after the complaint was filed. During that time, Pepper's and FP & L were provided with a list of individuals and documents with information relevant to the issues. The parties also agreed on a discovery schedule which the trial court extended on several occasions. In light of the foregoing, we hold that the district court did not abuse its discretion in denying the motion for additional time for discovery.
 
 C. CERCLA Liability
 
 13
 Count I of the amended complaint alleges that Pepper's and FP & L are entitled to contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Sec. 9607, and under Fla.Stat.Ann. Sec. 403.727 (1986).[3] An essential purpose of CERCLA is to place the ultimate responsibility for the clean-up of hazardous waste on "those responsible for problems caused by the disposal of chemical poison." United States v. Aceto Agric. Chemicals Corp., 872 F.2d 1373, 1377 (8th Cir.1989) (quoting Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir.1986)).
 
 
 14
 CERCLA authorizes suit against four classes of parties: (1) the owners and operators of a facility at which a release or threatened release of hazardous substances exists; (2) the owners or operators of such a facility any time in the past when hazardous substances were disposed of; (3) any person or entity who "arranged for" the treatment or disposal of a hazardous substance at the facility; and (4) any persons who transport hazardous substances to the facility. Aceto, 872 F.2d at 1377; 42 U.S.C. Sec. 9607(a). In this case, Pepper's and FP & L assert that the manufacturers "arranged for" the disposal of hazardous substances and thus, are liable under 42 U.S.C. Sec. 9607(a)(3).
 
 Section 9607(a)(3) provides:
 
 15
 (3) Any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity at any facility owned or operated by another party or entity and containing such hazardous substance....
 
 
 16
 CERCLA defines the terms "disposal" and "treatment" using the definitions contained in the Solid Waste Disposal Act. 42 U.S.C. Sec. 9601(29)[4]. Pepper's and FP & L do not seriously contend that the manufacturers entered into a contract or agreement for the disposal or treatment of hazardous substances. Pepper's and FP & L contend, however, that the manufacturers otherwise "arranged" for the disposal and treatment of hazardous substances. The term "arrange" is not defined in the Act.
 
 
 17
 At the outset, we note that a liberal judicial interpretation of the term is required in order that we achieve CERCLA's "overwhelmingly remedial" statutory scheme. United States v. Northeastern Pharmaceutical & Chemical Co., 810 F.2d 726, 733 (8th Cir.1986), cert. denied, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). See Aceto, 872 F.2d at 1380; United States v. Mottolo, 605 F.Supp. 898, 902 (D.N.H.1985). Whether an "arrangement for" disposal exists depends on the facts of each case. If a party merely sells a product, without additional evidence that the transaction includes an "arrangement" for the ultimate disposal of a hazardous substance, CERCLA liability would not be imposed. See, e.g., United States v. Westinghouse Electric Corp., 22 Env't Rep. (BNA) 1230, 1233 (S.D.Ind.1983) (supplier of PCB's for use in manufacture of transformers did not arrange for disposal of a hazardous waste, and thus could not be liable under section 107(a)(3)).
 
 
 18
 The manufacturers argue that they are not liable, as a matter of law. To support their position, the manufacturers rely on United States v. A & F Materials Co., 582 F.Supp. 842 (S.D.Ill.1984). In A & F Materials, the court stated that "liability for release under [section] 9607(a)(3) is not endless; it ends with that party who both owned the hazardous waste and made the crucial decision how it would be disposed of or treated, and by whom." A & F Materials, 582 F.Supp. at 845. The manufacturers argue that a manufacturer who sells a useful product can never "arrange for disposal" under the Act. According to the manufacturers, they sold FP & L a useful and valuable product, not a hazardous substance. The manufacturers urge us to reach this conclusion by pointing to the fact that the PCB found in the mineral oil was a valuable raw material which they normally included in other types of transformers for sale in the ordinary course of their business. According to the manufacturers, FP & L owned the hazardous waste and made the crucial decision how it would be disposed of or treated, and by whom.
 
 
 19
 We reject any attempt to establish a per se rule in determining a manufacturer's liability under CERCLA. We find that any such rule would frustrate CERCLA's broad remedial purpose. It would also be contrary to prevailing case law.
 
 
 20
 In Aceto, 872 F.2d 1373 (8th Cir.1989), for example, the Eighth Circuit recently held that manufacturers may be liable for arranging for disposal of a hazardous substance under CERCLA. In denying the manufacturer's motion to dismiss, the court stated that "courts have not hesitated to look beyond defendant's characterizations to determine whether a transaction in fact involves an arrangement for disposal of a hazardous substance." Aceto, 872 F.2d at 1381.
 
 
 21
 In New York v. General Electric Co., 592 F.Supp. 291 (N.D.N.Y.1984), the court rejected a similar argument. In General Electric, the manufacturer sold used oil containing PCB to a dragstrip, which used the oil for dust control on the raceway. The manufacturer argued that CERCLA liability did not exist because the dragstrip was not a waste facility and it did not contract for or otherwise arrange for the disposal of the oil. The court rejected both arguments noting that "the legislative history of CERCLA makes clear that 'persons cannot escape liability by "contracting away" their responsibility or by alleging that the incident was caused by the act or omission of a third party.' " General Electric Co., 592 F.Supp. at 297.
 
 
 22
 In light of the broad remedial nature of CERCLA, we conclude, as other courts have, that even though a manufacturer does not make the critical decisions as to how, when, and by whom a hazardous substance is to be disposed, the manufacturer may be liable. For liability to be imposed on such a manufacturer, the evidence must indicate that the manufacturer is the party responsible for "otherwise arranging" for the disposal of the hazardous substance.
 
 
 23
 Our rejection of a per se rule does not resolve this case. The manufacturers contend that they are entitled to summary judgment because Pepper's and FP & L did not present evidence indicating that any of the transactions involved an arrangement to dispose of hazardous waste.
 
 D. Summary Judgment
 
 24
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment "has the burden of showing that there is no genuine issue of fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "[A] party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial." Anderson, at 256, 106 S.Ct. at 2514. All evidence and reasonable factual inferences drawn therefrom must be viewed against the party seeking summary judgment. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1176 (11th Cir.1985).
 
 
 25
 In moving for summary judgment, the manufacturers relied on the pleadings and depositions. They argue that, viewed in the light most favorable to Pepper's and FP & L, the evidence shows that the manufacturers sold transformers which FP & L used for an extensive length of time. The manufacturers contend that because the sale of a useful product without more cannot subject them to CERCLA liability, they are entitled to summary judgment as a matter of law. Having met their burden, the manufacturers argue that the burden shifts to FP & L to establish that a genuine issue of material fact exists.
 
 
 26
 Our review of the record reveals that Pepper's and FP & L have not met their burden of demonstrating that the transactions involved anything more than a mere sale. As indicated earlier, Pepper's and FP & L did not present any affidavits to support their contention that the manufacturers intended to otherwise dispose of hazardous waste when they sold the transformers. Nothing in the record supports an inference that the manufacturers arranged for the disposal of hazardous waste by selling the transformers. We conclude that Pepper's and FP & L have not met their burden of establishing a genuine issue of material fact and therefore the manufacturers were entitled to judgment as a matter of law.
 
 CONCLUSION
 
 27
 We conclude that the district court did not abuse its discretion in denying FP & L's Rule 56(f) motion. We also conclude that, based on the record evidence, the district court correctly granted the manufacturers' motion for summary judgment. The district court is affirmed.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 Pursuant to statutory authority, the Administrator of the Environmental Protection Agency prohibited, subject to certain specific exceptions, the use of PCB "in any manner other than in a totally enclosed manner." 40 C.F.R. Sec. 761.20 (1988)
 
 
 [2]
 Fed.R.Civ.P. Rule 56(f) provides:
 (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 
 
 [3]
 Fla.Stat. Sec. 403.727(4)(c) is identical to 42 U.S.C. Sec. 9607(a)(3). For the purposes of this opinion, our discussion concerning 42 U.S.C. Sec. 9607(a)(3) should be treated as applicable to Fla.Stat. Sec. 403.727(4)(c)
 
 
 [4]
 42 U.S.C.A. Sec. 6903(34) (West 1976) defines "Treatment" as:
 Any method, technique, or process, including neutralization, designed to change the physical, chemical or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such wastes nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume.
 42 U.S.C.A. Sec. 6903(3) (West 1976) defines "Disposal" as:
 The discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.