**VINE STREET LLC Plaintiff**

v.

**James R. KEELING, As Independent Executor of the Estate of David Bart Keeling, Sr., Deceased; et al. Defendants**

**No. 6:03 CV 223.**

United States District Court,
E.D. Texas,
Tyler Division.

March 24, 2005.

Robert Scott Davis of Flowers, Davis, Tyler, for Plaintiffs.

Kenneth Carl Baker, of Baker & Patterson Houston, Stephen J. Valen of Filice, Brown, Eassa & McLeod, Oakland, Jonathan Burton Shoebotham of Thompson & Knight, Houston, E. Paul Cauley, Jr., Elizabeth Weathers of Sedgwick Detert, Moran & Arnold, Dallas, Charles Homer Clark of Clark, Lea & Ainsworth, Tyler, E. Paul Cauley, Jr., Elizabeth Weathers and Michael C. Diksa of Sedgwick, Detert, Moran & Arnold, Dallas, for Defendants Borg Warner Corp., Dow Chemical Co., Dow Chemical Corp., Fedders Corp., James R. Keeling, Maytag Corp.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court is Defendant The Dow Chemical Company's ("Dow") Motion to Dismiss (Docket No. 181) Plaintiff's Sixth Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the motion.

## BACKGROUND

Plaintiff Vine Street LLC ("Vine Street") owns property (hereinafter "the property") located at 914 West Glenwood Street in Tyler, Texas. From 1949 through 1996, the property was jointly owned by the families of Sol Roosth and A.S. Genecov. In 1996, ownership of the property was transferred to Stephen Roosth ("Roosth"). In 2001, Roosth formed Vine Street, and in 2002, transferred ownership of the property to Vine Street.

From 1961 through 1975, the property was leased to the late David Bart Keeling, Sr. ("Keeling"), who operated the College Cleaners Laundromat. Plaintiff alleges, based on the deposition testimony of Keeling's children, that the College Cleaners laundromat had Norge[1] coin-operated dry-cleaning machines, and that these machines' defective design and operation caused perchloroethylene ("PERC"), a common dry-cleaning fluid allegedly made and sold by Dow, to escape into the soil, contaminating the property and adjacent lots.

In 1998, the Rite–Aid pharmacy chain considered purchasing the property and conducted an environmental study. The results of the study and their possible role in Rite–Aid's decision to not purchase the property are unknown. Sometime after the Rite–Aid study, Roosth commissioned environmental studies on the property and in June 2001, confirmed environmental contamination. In March 2002, Plaintiff

---

1. Norge was apparently a leading maker of dry-cleaning and laundry equipment during this time period. In 1968, Fedders bought Norge from Borg–Warner. In 1979, Fedders sold Norge to Magic Chef. In 1986, Magic Chef merged with Maytag.

applied to participate in the Texas Natural Resource Conservation Commission's ("TNRCC")[2] voluntary cleanup program ("VCP"), and in July 2002, notified Keeling's son James that PERC contamination had been confirmed. In May 2003, Plaintiff commenced this action against the estate of Keeling. In March 2004, Plaintiff amended its complaint to include Maytag Corporation ("Maytag") and Fedders Corporation ("Fedders"), two previous owners of Norge, as defendants. In October 2004, Plaintiff amended its complaint to include the Borg–Warner Corporation ("Borg–Warner"), another previous owner of Norge. In November 2004, Maytag and Fedders filed third-party complaints against Dow. In January 2005, Maytag and Fedders non-suited Dow pursuant to Federal Rule of Civil Procedure 41, but shortly thereafter, Plaintiff again amended its complaint to include Dow as a defendant.

Plaintiff's complaint against Dow alleges violations of the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.,* and the Texas Solid Waste Disposal Act ("SWDA"), Texas Health and Safety Code § 361.001, *et seq.* Plaintiff additionally seeks declaratory relief holding Dow and the other defendants liable for future costs incurred in the cleanup.

### STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where a party fails to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion to dismiss, the court construes the complaint in favor of the plaintiff and all facts pleaded are taken to be true, no matter how improbable those facts. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct.

1827, 104 L.Ed.2d 338 (1989); *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b).

### VIOLATION OF DOCKET CONTROL ORDER

Dow argues that all claims against it should be dismissed since Vine Street violated the Court's Third Amended Docket Control Order (Docket No. 160) by amending its complaint to add Dow as a defendant after the December 1, 2004 deadline for joinder of additional parties. However, Dow was a party to this case until being non-suited on January 4, 2005 by Fedders and Maytag. Vine Street acted promptly and amended its complaint to bring Dow back in to the case on January 7, 2005. Thus, Vine Street did not violate the docket control order, as Dow was a party on December 1, 2004. Further, Dow's concerns that it is prejudiced by being brought back into the case after being non-suited are moot in light of the Court recently granting a motion for continuance (Docket No. 176) and issuing a Fourth Amended Docket Control Order (Docket No. 179). Dow will have adequate time to conduct discovery and prepare for trial. Dow's motion to dismiss for violat-

---

**2.** In September 2002, the TNRCC changed its name to the Texas Commission on Environmental Quality ("TCEQ").

ing the docket control order is therefore denied.

## ARRANGER STATUS UNDER CERCLA AND SWDA

■ Dow asserts that the CERCLA and SWDA claims should be dismissed since Dow is not a "potentially responsible party" as defined by either statute. The Court will analyze both assertions together because SWDA is a "remedial statute" substantially similar to CERCLA. *R.R. Street & Co., Inc. v. Pilgrim Enterprises, Inc.*, 81 S.W.3d 276, 291 (Tex.App.—Houston [1st Dist.] 2001, no pet.). *See also Blackmon v. Hansen*, 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943)(when the Texas state legislature adopts a statute with wording substantially similar to a federal statute, it must be presumed that the legislature intended to adopt the construction placed on that wording by the federal courts, and the courts should look to federal cases and the federal statute as a guide in interpreting the state statute).

■ To be held liable under CERCLA (or SWDA), a defendant must fall within at least one of four classes of responsible parties: (1) the owners and operators of a facility at which a release or threatened release of hazardous substances exists; (2) the owners or operators of such a facility any time in the past when hazardous substances were disposed of; (3) any person or entity who *arranged for* the treatment or disposal of a hazardous substance at the facility; and (4) any persons who transport hazardous substances to the facility. *See* 42 U.S.C. § 9607(a) (emphasis added). Because the "essential purpose of CERCLA is to place the ultimate responsibility for the clean-up of hazardous waste on those responsible for problems caused by the disposal of chemical poison," the four classes are not meant to circumscribe recovery, but rather to ensure that all who may have financially benefitted from commercial activities involving hazardous wastes are forced to bear subsequent costs in remedying the environmental harms caused by that waste. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316–17 (11th Cir.1990)(citing *United States v. Aceto Agric. Chemicals Corp.*, 872 F.2d 1373, 1377 (8th Cir.1989)). *See also State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir.1985). Vine Street alleges Dow, by manufacturing and selling PERC, is liable as an *arranger*.

■ To be held liable as an arranger, there must be "some nexus between the potentially responsible party and the disposal of the hazardous substance." *General Electric Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2d Cir.1992). When determining whether a party arranged for the disposal of a hazardous substance, there is no per se rule since CERCLA does not define arranger and its legislative history offers little guidance. *See South Florida Water Mgmt. District v. Montalvo*, 84 F.3d 402, 406–07 (11th Cir.1996).

■ The Fifth Circuit has rejected "a bright-line test for determining when one is an arranger." *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 929 (5th Cir.2000). Courts must therefore engage "in a case-by-case analysis of arranger liability, relying upon many factors," none of which are dispositive, to determine whether a sufficient nexus exists. *Sea Lion, Inc. v. Wall Chemical Corp.*, 974 F.Supp. 589, 595 (S.D.Tex.1996). Some of these factors may include whether the potentially responsible party: (a) had some actual involvement in the decision to dispose of the waste, or, alternatively, had an obligation to control the disposal of the waste, (b) engaged in a transaction for the purpose of waste disposal, (c) owned or possessed the waste, and/or (d) controlled the waste's disposal regardless of whether it owned or possessed it. *Id.* The analysis of these

factors and the Court's ultimate decision as to arranger liability must be based on "the totality of the circumstances." *Geraghty and Miller*, 234 F.3d at 929.

■ Despite the broad reach of CERCLA, "[i]t is clear that Congress did not intend CERCLA to target legitimate manufacturers or sellers of useful products." *Dayton Indep. School Dist. v. U.S. Mineral Prod. Co.*, 906 F.2d 1059, 1065 (5th Cir.1990). "A manufacturer who does nothing more than sell a useful, albeit hazardous product to an end user has neither generated, transported, nor arranged for the disposal of hazardous waste." *City of Merced v. Fields*, 997 F.Supp. 1326, 1332 (E.D.Cal.1998). However, chemical manufacturers "have been held liable as arrangers in cases in which they sold materials but knew that the arrangement would effectively dispose of its hazardous wastes." *Sea Lion*, 974 F.Supp. at 597.

■ To ultimately prevail in holding a chemical manufacturer or seller liable, a plaintiff must produce "additional evidence [showing] that the transaction included an arrangement for the disposal of the hazardous substance." *Florida Power & Light*, 893 F.2d at 1317. In their briefs, both parties labor over this point. However, in a motion to dismiss, the Court does not weigh evidence and only reviews allegations made in the pleadings. Vine Street has alleged that Dow knew at the time the PERC was made and sold that the dry cleaning process inherently resulted in the release of chemicals into the ground. Knowledge that a process inherently results in the disposal of hazardous chemicals can give rise to arranger liability. *See Aceto*, 872 F.2d at 1379–81. Whether or not Vine Street can prevail on this theory is not an issue for consideration at this stage. The only issue is whether Vine Street's allegations are sufficient to state a claim under CERCLA and SWDA. The Court concludes Vine Street has stat-

ed a claim and denies Dow's motion. After further discovery, Dow may re-file this motion as a motion for summary judgment if it believes Vine Street cannot produce evidence showing Dow's sale of PERC constituted an arrangement for disposal.

## RECOVERY UNDER SECTIONS 107(a) AND 113(f) OF CERCLA

Dow argues that because Vine Street is a potentially responsible party under CERCLA, Vine Street cannot sustain a claim for recovery pursuant to Section 107(a) of CERCLA. 42 U.S.C. § 9607(a). Dow further argues that because Vine Street has not been subject to a civil or administrative action under Section 106 or Section 107(a) of CERCLA, it cannot sustain a claim for contribution pursuant to Section 113(f)(1) of CERCLA. 42 U.S.C. § 9613(f)(1). The Court concludes that because Vine Street has not been sued under Section 106 or Section 107(a), it cannot state a claim for contribution under Section 113(f)(1). However, the Court concludes Vine Street can state a claim against other potentially responsible parties under Section 107(a), despite itself being a potentially responsible party.

*Section 113(f)*

■ Section 113(f)(1) of CERCLA "allows persons who have undertaken efforts to clean up properties contaminated by hazardous substances to seek contribution from other parties liable under CERCLA." *Cooper Industries, Inc. v. Aviall Services, Inc.*, —— U.S. ——, ——, 125 S.Ct. 577, 580, 160 L.Ed.2d 548 (2004). As used in Section 113(f)(1), "[c]ontribution is a standard legal term" defined as "a claim by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *United Tech. Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96, 99 (1st Cir.1994). Section 113(f)(1) is "aimed at

promoting equitable allocations of financial responsibility" by authorizing potentially responsible parties in pending or completed CERCLA actions "to initiate private actions for full or partial contribution" from other potentially responsible parties "by way of impleader or an independent action." *In re Hemingway Transp., Inc.,* 993 F.2d 915, 922 (1st Cir.1993). Thus, a claim for contribution under Section 113(f)(1) can only be brought by a potentially responsible party "during or following any civil action" under Sections 106 or 107(a) of CERCLA. *See* 42 U.S.C. § 9613(f)(1). As the Supreme Court made abundantly clear in *Aviall,* "a private party who has not been sued under [Section] 106 or [Section] 107(a)" may not "obtain contribution under Section 113(f)(1) from other liable parties." 125 S.Ct. at 580.

■ Vine Street, which has incurred (or will soon incur) significant costs in remedying the PERC contamination at the property, seeks contribution from Dow. Vine Street though does not allege that it has been sued under Section 106 or Section 107(a), or that it has otherwise been legally compelled to incur those cleanup costs. Vine Street did apply to participate in the TNRCC voluntary cleanup program, but participation in that exact same program was held in *Aviall* to alone be insufficient grounds to state a claim for contribution under Section 113(f)(1) of CERCLA. *See* 125 S.Ct. at 582. Thus, Vine Street has no legal basis for a contribution claim under Section 113(f)(1).

■ Vine Street argues that not allowing it to seek contribution for voluntarily incurred costs is inequitable and contrary to the policy of CERCLA. Yet, absent Vine Street showing what payments it has been compelled to make, those policy arguments cannot overcome "the clear meaning of the text" of Section 113(f)(1). *Aviall,* 125 S.Ct. at 584. It is clear that Section 113(f)(1) only allows claims "by and be-

tween jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994). Thus, Vine Street's claim for contribution under Section 113(f)(1) is dismissed.

*Section 107(a)*

■ Dow argues that Vine Street's claim for recovery under Section 107(a) should also be dismissed since Vine Street is, as a matter of law, a potentially responsible party under CERCLA and therefore cannot bring a claim under Section 107(a). The Court agrees that Vine Street is a potentially responsible party since it is the owner of the property and thus falls into the first of the four classes of potentially responsible parties under Section 107(a). *See* 42 U.S.C. § 9607(a)(1). However, the Court concludes that in the unique circumstances of this case, Vine Street's status as a potentially responsible party does not bar it from bringing a claim under Section 107(a).

Dow argues that it is a well-established legal principle that a potentially responsible party cannot bring an action under Section 107(a). However, Dow misstates that alleged principle, and as will be discussed later, that principle does not apply in the present case. Most actions under Section 107(a) are "brought by innocent parties that have undertaken cleanups (say, the federal, state or local government)" and are seeking complete indemnity, *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1513 (11th Cir. 1996), while most potentially responsible parties only "seek contribution rather than complete indemnity" and thus proceed under Section 113(f)(1), *United Tech.,* 33 F.3d at 100. "Although it possible that a private party may qualify as an innocent plaintiff" and "bring a cost recovery action based on [Section] 107(a) alone, the typical [Section] 107(a) action is brought by a

governmental plaintiff that has expended taxpayer dollars in cleaning up a facility." *Redwing*, 94 F.3d at 1513. Conversely, most potentially responsible parties do not "spontaneously initiate[ ] a cleanup without governmental prodding," so most actions brought by potentially responsible parties typically occur only during or after that potentially responsible party is subject to a government-initiated CERCLA action, placing such actions squarely within the ambits of Section 113(f)(1). *United Tech.*, 33 F.3d at 99 n. 8. Thus, while most Section 107(a) claims are brought by innocent parties and most Section 113(f) claims are brought by potentially responsible parties, that does not mean potentially responsible parties are barred from bringing claims under Section 107(a),[3] as Dow asserts.[4]

Dow's assertion is reasonable though, as most cases where courts have been called to clarify whether a potentially responsible party's claim falls under Section 107(a) or Section 113(f) have held that the potentially responsible party's claim falls under Section 113(f), not Section 107(a). *See Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir.1998); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir.1998); *Pneumo Abex Corp. v. High Point*, 142 F.3d 769 (4th Cir.1998); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298 (9th Cir.1997); *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116 (3d Cir.1997); *Redwing*, 94 F.3d 1489; *U.S. v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530 (10th Cir.1995); *United Tech.*, 33 F.3d 96. However, in all of those cases, the issue was whether a potentially responsible party with a claim under Section 113(f) could concurrently bring a claim under Section 107(a).[5]

3. Innocent parties however would be barred from bringing claims under Section 113(f), since an innocent party would not have been subject to an action under Section 106 or Section 107(a) of CERCLA and thus would be unable to sustain a claim under Section 113(f).

4. Dow places emphasis on the distinction between innocent and potentially responsible parties and the appropriate measure of relief, but that distinction does not matter in the present case. That distinction is a way of distinguishing between parties seeking to join other parties in liability and parties seeking to divide liability amongst other parties. The former usually involves a government or some other party not connected to the disposal of hazardous wastes seeking to hold potentially responsible parties jointly and severally liable for costs it had incurred cleaning contaminated land. The latter involves potentially responsible parties seeking to divide a judgment or decree relating to cleanup costs. Because the former voluntarily incurred the costs, they were generically referred to as innocent parties, in contrast to the latter, who had been legally compelled, via judgment or decree, to incur the costs. Parties legally compelled to incur costs have a remedy under Section 113(f)(1) and could not pursue relief under Section 107(a). Thus, the distinction between innocent and potentially responsible parties is useful only when determining whether a potentially responsible party has been legally compelled to incur costs, and subsequently whether it must seek relief under Section 113(f). If a party has been compelled to incur costs, it is not innocent and must proceed under Section 113(f), while if it has not incurred costs, it is innocent and relief must be pursued under Section 107(a). Here, the Court has already determined Vine Street has not been subject to an action under Sections 106 or 107(a) and cannot seek relief under Section 113(f)(1), so Vine Street, despite being a potentially responsible party, actually falls into the same category as the so-called innocent parties.

5. Such was the case in *Clear Lake Prop. v. Rockwell Int'l. Corp.*, a case Dow heavily relies on to assert that a potentially responsible party cannot state a claim under Section 107(a). 959 F.Supp. 763 (S.D.Tex.1997). That case involved a defendant potentially responsible party bringing third-party claims against other potentially responsible parties and the court holding those claims were governed by the express language of Section 113(f), not Section 107(a).

Those courts ruled that because the potentially responsible party could bring a claim under Section 113(f), it could not bring a claim under Section 107(a). Those courts though did not rule that a potentially responsible party without a claim under Section 113(f) cannot bring a claim under Section 107(a). That is the issue the Court must determine here. Here, Vine Street does not have recourse under Section 113(f) since it spontaneously initiated cleanup at the property and now seeks recovery, making this case the unique situation where a potentially responsible party is seeking recovery not addressed by Section 113(f).

■■■■ The Fifth Circuit has not directly addressed the issue of precisely who may bring a claim under Section 107(a), but the First Circuit suggested that Section 107(a) may enable two types of claims. The first is the typical suit brought by the innocent plaintiff, as discussed above. *See in re Hemingway Transp., Inc.*, 993 F.2d 915, 931 (1st Cir.1993)("[f]or instance, a neighboring landowner, who is neither a current nor a past owner or operator of the contaminated facility, hence not strictly liable as a 'covered person' under section 9607(a), may incur response costs as a result of a threatened release and potential migration of hazardous substances from an adjoining property, and may assert a right of action" under Section 107(a)). The second type of claim is like our present case. When a "private-action plaintiff itself is potentially liable for … response costs, and thus is akin to a joint tortfeasor," Section 107(a)(4)(B) of CERCLA "serves as the pre-enforcement analog to the impleader contribution action permitted under section 9613(f) [Section 113(f) of CERCLA]." *Id.* Thus, in the situation where a potentially responsible party cannot meet the specific requirements to state a claim for contribution under Section 113(f)(1), the Court concludes that a potentially responsible party can bring a claim under Section

107(a)(4)(B). Quite simply a potentially responsible party that voluntarily works with a government agency to remedy environmentally contaminated property should not have to wait to be sued to recover cleanup costs since Section 113(f)(1) is not meant to be the only way to recover cleanup costs.

Contrasting Section Section 107(a) to Section 113(f) shows why Section 113(f) is not meant to be the only way to recover cleanup costs and more importantly why a party like Vine Street that does not meet the narrow requirements of Section 113(f) may still bring an action under the broader Section 107(a). Section 113(f) was passed by Congress as part of the Superfund Amendments and Reauthorization Act ("SARA") of 1986 to overcome the problem of "the divisibility defense to joint and several liability" being "frequently invoked in cost recovery actions brought under [Section] 107(a)." *Redwing Carriers*, 94 F.3d at 1513. Section 113(f)(1) created a regime of pro rata or divisible liability, in contrast to the joint and several liability of Section 107(a). *See Clear Lake*, 959 F.Supp. at 765 n. 1. Section 113(f)(1) allowed courts to apportion liability to specific defendants after damages had been determined in a civil or administrative action, rather than merely holding a pool of parties jointly and severally liable and then determining whether that liability was "divisible" amongst the parties. *See Redwing Carriers*, 94 F.3d at 1513. Section 113(f)(1) did not however create contribution actions, as contribution actions have existed ever since CERCLA was first enacted in 1980. *Aviall*, 125 S.Ct. at 581. That is evident from the text of Section 113(f)(1), which contains an "enabling" clause, creating the specific cause of action, and a "savings" clause, preserving other means of seeking contribution. *See id.* at 583–84. *See also Key Tronic Corp. v. U.S.*, 511 U.S. 809, 816, 114 S.Ct. 1960,

128 L.Ed.2d 797 (1994)("[t]he 1986 amendments included a provision—CERCLA [Section] 113(f)—that expressly created a cause of action for contribution . . . [o]ther SARA provisions, moreover, appeared to endorse the judicial decisions recognizing a cause of action under [Section] 107 by presupposing that such an action existed."). One of those other means of seeking contribution is under Section 107(a). Section 107(a)(4)(B) allows any person "that had incurred response costs, but that had done so voluntarily and was not itself subject to suit" to bring "a cause of action for cost recovery against other [potentially responsible parties]." *See Aviall*, 125 S.Ct. at 581. While Section 113(f) is specifically worded to create a specific cause of action, Section 107(a) is much more broadly worded and allows a variety of claims. *Cf. Akzo Coatings*, 30 F.3d at 764 ("it is true that section 107(a) permits any person—not just the federal or state governments—to seek recovery of appropriate costs incurred in cleaning up a hazardous waste site").

▪ The Court therefore concludes that while Section 113(f) must be read to create a specific claim for contribution under certain circumstances and to exclude all other claims, Section 107(a), in enabling innocent parties' claims for response costs, entails a wider range of other actions, including potentially responsible parties seeking contribution for costs incurred in voluntary cleanups. Because Vine Street is, as a matter of law, able to state a claim pursuant to Section 107(a), Dow's motion is denied.

### DECLARATORY RELIEF

Dow argues Vine Street's claim for declaratory relief should be dismissed since there is no actual controversy under CERCLA between Dow and Vine Street. However, the Court concluded Vine Street has stated a claim under CERCLA, so a controversy presently exists. Dow's mo-

tion is therefore denied, without prejudice, as moot.

### CONCLUSION

The Court concludes Vine Street did not violate the docket control order by amending its complaint to add Dow, so the Court **DENIES** Dow's motion to dismiss on those grounds.

The Court concludes Vine Street has stated a claim where Dow could be held liable as an arranger under CERCLA and SWDA, so the Court **DENIES** Dow's motion to dismiss on those grounds.

The Court concludes that because Vine Street has not been sued or subject to an administrative action under CERCLA, it may not state a claim for relief under Section 113(f) of CERCLA. Thus, the Court **GRANTS** Dow's motion and **DISMISSES** Vine Street's claims under Section 113(f) of CERCLA. However, the Court concludes Vine Street may state a claim under Section 107(a) of CERCLA, so the Court DENIES Dow's motion to dismiss on those grounds.

The Court concludes Dow's arguments regarding Vine Street's claim for declaratory relief are moot, so the Court **DENIES** Dow's motion to dismiss on those grounds.