**VINE STREET LLC Plaintiff**

v.

**James R. KEELING, As Independent Executor of the Estate of David Bart Keeling, Sr., Deceased; et al. Defendants**

No. 6:03 CV 223.

United States District Court, E.D. Texas, Tyler Division.

March 24, 2005.

---

Robert Scott Davis of Flowers, Davis, Tyler, TX, for Plaintiffs.

Kenneth Carl Baker, of Baker & Patterson Houston, TX, for Borg Warner Corp, defendant.

Stephen J. Valen of Filice, Brown, Eassa & McLeod, Oakland, CA, for Dow Chemical Co., defendant.

Jonathan Burton Shoebotham of Thompson & Knight, Houston, TX, for Dow Chemical Corp., defendant.

E. Paul Cauley, Jr., Elizabeth Weathers of Sedgwick Detert, Moran & Arnold, Dallas, TX, for Fedders Corp., Maytag Corp., defendants.

Charles Homer Clark of Clark, Lea & Ainsworth, Tyler, TX, for James R. Keeling, defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court is Defendants Maytag Corporation ("Maytag") and Fedders Corporation's ("Fedders") Motion for Summary Judgment (Docket No. 122) on all claims, pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the motion.

### BACKGROUND

Plaintiff Vine Street LLC ("Vine Street") owns property (hereinafter "the property") located at 914 West Glenwood Street in Tyler, Texas. From 1949 through 1996, the property was jointly

owned by the families of Sol Roosth and A.S. Genecov. In 1996, ownership of the property was transferred to Stephen Roosth ("Roosth"). In 2001, Roosth formed Vine Street, and in 2002, transferred ownership of the property to Vine Street.

From 1961 through 1975, the property was leased to the late David Bart Keeling, Sr. ("Keeling"), who operated the College Cleaners Laundromat. Plaintiff alleges, based on the deposition testimony of Keeling's children, that the College Cleaners laundromat had Norge [1] coin-operated drycleaning machines, and that these machines' defective design and operation caused perchloroethylene ("PERC"), a common dry-cleaning fluid, to escape into the soil, contaminating the property and adjacent lots.

In 1998, the Rite–Aid pharmacy chain considered purchasing the property and conducted an environmental study. The results of the study and their possible role in Rite–Aid's decision to not purchase the property are unknown. Sometime after the Rite–Aid study, Roosth commissioned environmental studies on the property and in June 2001, confirmed environmental contamination. In March 2002, Plaintiff applied to participate in the Texas Natural Resource Conservation Commission's ("TNRCC") [2] voluntary cleanup program, and in July 2002, notified Keeling's son James that PERC contamination had been confirmed. In May 2003, Plaintiff commenced this action against the estate of Keeling. In March 2004, Plaintiff amended its complaint to include Maytag and Fedders, two previous owners of Norge. In October 2004, Plaintiff amended its

complaint to include the Borg–Warner Corporation ("Borg–Warner"), another previous owner of Norge. In November 2004, Maytag and Fedders filed third-party complaints against The Dow Chemical Company ("Dow"), the alleged maker of the PERC that contaminated the property. In January 2005, Maytag and Fedders non-suited Dow pursuant to Federal Rule of Civil Procedure 41, but shortly thereafter, Plaintiff again amended its complaint to include Dow as a defendant.

Plaintiff's complaint alleges violations of the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and the Texas Solid Waste Disposal Act ("SWDA"), Texas Health and Safety Code § 361.001, *et seq.* Plaintiff also alleges claims of negligence and negligence per se.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A party moving for summary judgment "has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,*

---

1. Norge was apparently a leading maker of dry-cleaning and laundry equipment during this time period. In 1968, Fedders bought Norge from Borg–Warner. In 1979, Fedders sold Norge to Magic Chef Corporation. In 1986, Magic Chef merged with Maytag.

2. In September 2002, the TNRCC changed its name to the Texas Commission on Environmental Quality ("TCEQ").

477 U.S. at 256, 106 S.Ct. 2505. If Plaintiff sets forth specific facts essential to their claims, a genuine issue of material fact will preclude summary judgment. *See Coleman v. Houston Indep. School Dist.,* 113 F.3d 528, 533 (5th Cir.1997).

## TIME BARRING OF NEGLIGENCE CLAIMS

Maytag and Fedders argue that Plaintiff's state law claims for negligence and negligence per se are time barred by the applicable statute of limitations, or alternatively, are time barred by the applicable statute of repose. Because the Court concludes that the negligence and negligence per se claims are barred by the statute of limitations, it will not consider the statute of repose arguments.

■ The statute of limitations for negligence claims is two years. *See* Tex. Civ. Prac. and Rem. Code § 16.003. Negligence claims accrue at the time a wrongful act caused an injury. *See Childs v. Haussecker,* 974 S.W.2d 31, 36 (Tex.1998). A defendant moving for summary judgment on the affirmative defense of limitations bears the burden of conclusively proving when the cause of action accrued. *See KPMG Peat Marwick v. Harrison County Housing Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). Maytag and Fedders argue that Plaintiff's claims against them could have accrued no later than 1975, the year the dry-cleaning facility last operated on the property. However, Plaintiff asserts that the discovery rule applies, tolling the statute of limitations until Roosth discovered the environmental contamination in June 2001.

■ "The discovery rule … delays the commencement of the limitations period when the nature of the injury is inherently undiscoverable and evidence of the injury is objectively verifiable." *Youngblood v. U.S. Silica Co.,* 130 S.W.3d 461, 464 (Tex.App.—Texarkana 2004, pet. filed).

"These two elements of inherent undiscoverability and objective verifiability balance … conflicting policies in statutes of limitations: the benefits of precluding stale claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period." *Id.* at 464–65. The requirement of inherent undiscoverability recognizes that the discovery rule should only be invoked if it is difficult for the injured party to learn of a negligent act causing an injury. *See Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996). An injury is inherently undiscoverable if it is unlikely to be discovered within the prescribed limitations period despite due diligence. *See S.V. v. R.V.,* 933 S.W.2d 1, 6–7 (Tex.1996). Because the discovery rule focuses on the nature of an injury rather than the specifics of the injury, when demonstrating that an injury was inherently undiscoverable, the issue is whether such an injury is inherently undiscoverable on a "categorical" basis, not when a plaintiff specifically discovers the injury. *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 122 (Tex.2001). Even if the discovery rule is pled, all that is required to commence the limitations period is the discovery of the existence of the injury and its general cause, not the exact cause in fact and specific parties responsible. *See Russell v. Ingersoll-Rand Co.,* 841 S.W.2d 343, 344 n. 3 (Tex. 1992). Thus, "[w]hen applied, the [discovery] rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury," but does not buy the plaintiff extra time to finish studies pinpointing details and defendants. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990).

Maytag and Fedders, as the parties moving for summary judgment, "bear[ ] the burden of negating the discovery rule"

by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence, should have discovered the nature of the injury. *Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 567 (Tex.App.—Texarkana 2000, pet. denied). The Court concludes that Maytag and Fedders have carried this burden. Though fact issues remain as to precisely when the contamination should have been discovered, Maytag and Fedders have presented evidence showing a reasonable person would have known well before June 2001 that the nature of the injury on the property was environmental contamination.

■ The only question here is whether Plaintiff should have been aware of the nature of the injury by the late 1990s or whether Plaintiff should have been aware earlier. In either case, the cause of action accrued sometime more than two years before this action was commenced in May 2003. Evidence shows Roosth was aware of environmental studies being conducted on the property in 1998. Even if this did not show the presence of PERC on the property, it would show a reasonable person that the property might be environmentally contaminated. Thus, after 1998, or sometime shortly thereafter, Plaintiff could no longer claim the environmental contamination at the property was inherently undiscoverable. Furthermore, the Roosth family was fully aware that a dry cleaning business, College Cleaners, operated on the property for the fourteen years prior to 1975 and that dry cleaning chemicals were used, with potential contamination possible. Ever since College Cleaners closed in 1975, the Roosth family had "the opportunity to inspect the property." *Texas Industries, Inc. v. City of Dallas*, 1 S.W.3d 792, 794 (Tex.App.—Eastland 1999, pet. denied) Ever since Stephen Roosth took ownership of the property in 1996, he personally had that same opportunity to inspect the property. A "routine inspection would have revealed" the existence of the problems Rite–Aid suspected in 1998. *Id.* Quite simply, there is nothing inherently undiscoverable about the environmental contamination alleged here that would toll the statute of limitations until June 2001.

Regardless of precisely when this cause of action accrued—whether it be sometime in the 1970s or not until sometime in the late 1990s—there is no doubt that it accrued more than two years before this action was commenced in May 2003. The Court therefore grants summary judgment on the negligence and negligence per se claims against Maytag and Fedders, and dismisses those claims as barred by the statute of limitations.

## ARRANGER STATUS UNDER CERCLA AND SWDA

Maytag and Fedders assert that the claims under CERCLA and SWDA should be dismissed because they are not "potentially responsible parties" as defined in these statutes. The Court will analyze both assertions together because SWDA is a "remedial statute" substantially similar to CERCLA. *R.R. Street & Co., Inc. v. Pilgrim Enterprises, Inc.*, 81 S.W.3d 276, 291 (Tex.App.—Houston [1st Dist.] 2001, no pet.). *See also Blackmon v. Hansen*, 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943)(when the Texas state legislature adopts a statute with wording substantially similar to a federal statute, it must be presumed that the legislature intended to adopt the construction placed on that wording by the federal courts, and the courts should look to federal cases and the federal statute as a guide in interpreting the state statute).

To be held liable under CERCLA (or SWDA), a defendant must fall within at least one of four classes of responsible

parties: (1) the owners and operators of a facility at which a release or threatened release of hazardous substances exists; (2) the owners or operators of such a facility any time in the past when hazardous substances were disposed of; (3) any person or entity who *arranged for* the treatment or disposal of a hazardous substance at the facility; and (4) any persons who transport hazardous substances to the facility. *See* 42 U.S.C. § 9607(a) (emphasis added). Because the "essential purpose of CERCLA is to place the ultimate responsibility for the clean-up of hazardous waste on those responsible for problems caused by the disposal of chemical poison," the four classes are not meant to circumscribe recovery, but rather to ensure that all who may have financially benefited from commercial activities involving hazardous wastes are forced to bear subsequent costs in remedying the environmental harms caused by that waste. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316–17 (11th Cir.1990)(citing *United States v. Aceto Agric. Chemicals Corp.*, 872 F.2d 1373, 1377 (8th Cir.1989)). *See also State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1039–42 (2d Cir.1985)(discussing policy underlying CERCLA liability). Plaintiff alleges Maytag and Fedders are liable as arrangers.

■ To be held liable as an arranger, there must be "some nexus between the potentially responsible party and the disposal of the hazardous substance." *General Electric Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2d Cir.1992). When determining whether a party arranged for the disposal of a hazardous substance, there is no per se rule since CERCLA does not define arranger and its legislative history offers little guidance. *See South Florida Water Mgmt. District v. Montalvo*, 84 F.3d 402, 406–07 (11th Cir.1996).

■ The Fifth Circuit has rejected "a bright-line test for determining when one is an arranger." *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 929 (5th Cir.2000). Courts must therefore engage "in a case-by-case analysis of arranger liability, relying upon many factors," none of which are dispositive, to determine whether a sufficient nexus exists. *Sea Lion, Inc. v. Wall Chemical Corp.*, 974 F.Supp. 589, 595 (S.D.Tex.1996). Some of these factors may include whether the potentially responsible party: (a) had some actual involvement in the decision to dispose of the waste, or, alternatively, had an obligation to control the disposal of the waste, (b) engaged in a transaction for the purpose of waste disposal, (c) owned or possessed the waste, and/or (d) controlled the waste's disposal regardless of whether it owned or possessed it. *Id.* The analysis of these factors and the Court's ultimate decision as to arranger liability must be based on "the totality of the circumstances." *Geraghty and Miller*, 234 F.3d at 929.

■ Plaintiff, by submitting an affidavit from Bruce E. Dale ("Dale"), Ph.D., Professor of Chemical Engineering at Michigan State University, has set forth specific facts showing the Norge equipment caused the release of hazardous substances onto the property. The Dale affidavit raises at least three bases for establishing arranger liability. First, Norge's user manuals for its dry cleaning systems instructed operators to plumb waste water containing PERC directly into the open sewer. Giving "direct advice ... to dispose of PCE-containing separator water by dumping it into the public sewer" gives rise to arranger liability. *R.R. Street & Co.*, 81 S.W.3d at 295. Second, design and engineering defects in the Norge dry cleaning equipment caused the release of free phase PERC. The equipment was prone to rapid pressure

changes, clogs, and leaks, all of which caused PERC to be released during operation. Such releases are analogous to a chemical company being held liable as an arranger for leaky pipes in their tanker trucks incidentally spilling chemicals on the ground. *See Amcast Industrial Corp. v. Detrex Corp.,* 2 F.3d 746 (7th Cir.1993). Third, Norge separators[3] had no user controls, could not be operated by the dry cleaner, and simply functioned as current conditions dictated. The dry cleaner therefore had no control over the release of free phase PERC when the separator malfunctioned. Thus, the release of PERC was "inherent" in the operation of Norge-designed separators, making Norge liable as an arranger. *See Aceto,* 872 F.2d at 1379. Drawing all inferences in favor of Plaintiff, the facts presented in Dale's affidavit are sufficient to raise fact issues as to whether a nexus exists between Maytag and Fedders and the disposal of PERC. The Court concludes Plaintiff has raised genuine issues of material fact and therefore denies Maytag and Fedders' motion for summary judgment on the CERCLA and SWDA claims.

The Court recognizes the line of cases that have found somewhat similar activities to not give rise to liability under CERCLA. *See, e.g., South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402 (11th Cir.1996); *AM Int'l, Inc. v. Int'l Forging Equip. Corp.,* 982 F.2d 989 (6th Cir.1993); *General Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281 (2d Cir. 1992); *3550 Stevens Creek Assoc. v. Barclays Bank of Cal.,* 915 F.2d 1355 (9th Cir.1990); *Dayton Indep. School Dist. v. U.S. Mineral Prod. Co.,* 906 F.2d 1059 (5th Cir.1990); *Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313 (11th Cir.1990); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651

(N.D.Ill.1988), *aff'd,* 861 F.2d 155 (7th Cir. 1988). However, this line of cases can be distinguished from the present case.

For example, in *Edward Hines,* a defendant was held to not be an arranger, since despite giving advice on the disposal of chemicals, the defendant did not ultimately decide how chemicals would be disposed. *See* 685 F.Supp. at 656–57. Simply stated, the defendant in *Edward Hines* was too far removed from the actual disposal to make decisions arranging for the disposal. Here, Plaintiff has presented evidence raising fact issues about Norge's role in the disposal of PERC.

Likewise, in *Florida Power & Light,* a product manufacturer that sold an electric transformer, containing incidental amounts of embedded hazardous materials, unaware of how it would disposed of decades later, was held to be too far removed from the disposal to have control over the release of hazardous chemicals. *See* 893 F.2d at 1318–19. However, Plaintiff has presented evidence showing Norge knew its equipment inherently disposed of PERC, distinguishing the present case from *Florida Power & Light.*

Thus, in the above line of cases, the defendant was so far removed that no nexus could be established between the defendant and the disposal of waste. In the present case, Plaintiff has raised fact issues as to whether Maytag and Fedders are liable as arrangers. Because there are questions of material fact as to Maytag and Fedders' arranger status, the Court denies summary judgment on the CERCLA and SWDA claims.

## NON–EXISTENCE OF MACHINERY

Maytag and Fedders assert that because all of Plaintiff's claims are based on allega-

---

**3.** A separator removes and recycles PERC during the dry-cleaning process by extracting reusable free-phase PERC from waste water containing dissolved PERC.

tions of defective machinery, it needs to identify the defective dry cleaning machines. Maytag and Fedders ask the Court to dismiss all claims since College Cleaners long ago ceased operations on the property and the Norge dry-cleaning machines are long gone. The Court rejects this argument.

■ The non-existence of the actual dry-cleaning equipment could have caused fatal evidentiary difficulties in establishing negligence or negligence per se claims, but the Court has already dismissed those claims. The CERCLA and SWDA claims are based on Norge machines being defectively designed. The Court has no reason to believe that Plaintiff will be unable to present documents and other proof relating to the machines' design and operation. Indeed, the Plaintiff has already done so by presenting the Dale affidavit. Maytag and Fedders' motion for summary judgment on these grounds is therefore rejected.

## CONCLUSION

The Court concludes the negligence and negligence per se claims are time barred by the statute of limitations. The Court therefore **GRANTS** summary judgment and dismisses those claims with prejudice.

The Court concludes Plaintiff has set forth specific facts to support a claim of arranger liability under CERCLA and SWDA against Maytag and Fedders. Genuine issues of material fact exist, so the Court **DENIES** summary judgment on the CERCLA and SWDA claims.

The Court concludes the non-existence of the machinery does not raise fatal evidentiary concerns that warrant dismissal of the CERCLA or SWDA claims, so the

Court again **DENIES** summary judgment on those claims.